A10A1196. LEVEL ONE CONTACT, INC. et al.
v. BJL ENTERPRISES, LLC.
(699 SE2d 89)

JOHNSON, Judge.

This contract case involves a commercial lease agreement. In April 2005, Samuel Winters, the owner of Level One Contact, Inc., contracted with Paul Green to rent a large manufacturing facility. Green spent over $180,000 toward specialized tenant improvements, and Winters, on behalf of Level One, signed a seven-year lease. The lease began in August 2005 with initial monthly payments of $5,250 and called for progressive payments until June 2012, with concluding monthly payments of $6,573. After seven months, Green sold the property to John Lunsford by virtue of a warranty deed that transferred all rights and privileges. Lunsford thereafter transferred title to the property to his family business, BJL Enterprises, LLC, by virtue of a similar warranty deed transferring all rights to the property.

Winters, on behalf of Level One, paid the rent each and every month. However, after operating the business for approximately two years, Winters sold substantially all business assets to North Star Chemicals, Inc. On September 4, 2007, Level One notified Lunsford

---

[8] *Lam,* supra at 138.
[9] *Reeves v. Edge,* 225 Ga. App. 615, 620 (4) (484 SE2d 498) (1997).

that it was vacating the property and terminating the lease. Level One subsequently stopped paying rent.

In January 2008, BJL Enterprises filed suit against Level One and Winters for the unpaid rent due on the lease, fraudulent conveyances, stubborn litigiousness, bad faith, and punitive damages. Level One and Winters counterclaimed for failure to return their security deposit pursuant to the lease, conversion, trespass to property, attorney fees, and punitive damages. A jury found in favor of BJL Enterprises and against Level One in the amount of $103,954 in past due rent, $67,734 in attorney fees and expenses of litigation pursuant to the lease, and $1 for attorney fees for stubborn litigiousness and bad faith. The jury found in favor of BJL Enterprises and against Winters for fraudulent conveyance in the amount of $103,954, and $1 for attorney fees for stubborn litigiousness and bad faith.

Level One and Winters appeal, alleging (1) the trial court erred in denying their motions for directed verdict because BJL Enterprises lacked standing to pursue its claims and because the lease was terminated; (2) the trial court erred in failing to let them challenge the attorney fees evidence proffered by BJL Enterprises; (3) the trial court erred in failing to reduce the amount of attorney fees awarded against Level One as required by statute; and (4) the trial court erred in awarding pre-trial discovery sanctions to BJL Enterprises based on a finding that Level One and Winters withheld documents during discovery. We reverse the trial court's judgment with respect to the attorney fees awarded pursuant to the lease because the amount is limited by statute. However, we affirm the trial court's order and judgment on all other issues.

1. Level One and Winters contend the trial court erred in denying their motion for directed verdict because BJL Enterprises lacked standing to pursue its claims and because the lease was terminated either by agreement of the parties or by operation of law. We find no merit to either of these claims.

Under Georgia law, a directed verdict is authorized only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict.[1] Consequently, the denial of these motions for directed verdict will be affirmed if, viewing the record in the light most favorable to the party opposing the motions, there is any evidence supporting the jury's verdict.[2]

(a) *Standing*: Level One and Winters argue that although BJL

---

[1] See *Rose v. Cain*, 247 Ga. App. 481, 482 (1) (544 SE2d 453) (2001).

[2] Id.

Enterprises has title to the property, it had no standing to enforce the commercial lease because there was never a written assignment of the lease from Green to Lunsford, or from Lunsford to BJL Enterprises. We disagree.

"The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it."[3] An exception to this requirement of contractual privity occurs when a party assigns another the contractual right to collect payment, including the right to sue to enforce the right.[4] However, to be enforceable by the assignee, such an assignment must be in writing.[5]

Here, there is evidence of a written assignment. The warranty deed transferring title to the property from the original landlord to Lunsford includes the following language: "**To have and to Hold** the said described property, with all and singular the rights, members [and] appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE."[6] Likewise, the quitclaim deed transferring title to the property from Lunsford to BJL Enterprises also includes the language "with all the rights, members and appurtenances to the said described premises in anywise appertaining or belonging." While the mere conveyance of title to the premises is insufficient to show an assignment of the lease, the language used in the deeds in this case can be read as an assignment of the lease at issue. Level One and Winters do not cite to any case, and we can locate no case, holding that such language in a deed does not constitute an assignment of a lease.

(b) *Lease Termination*: Winters and Level One rely on the case of *Savannah Yacht Corp. v. Thunderbolt Marine*,[7] to support their contention that the lease was terminated because BJL Enterprises "forced" them to vacate the premises. However, we agree with the trial court's finding: "I think [*Savannah Yacht Corp.*] is really based on a totally different set of facts than the case we have pending here. I don't even think the facts are even close enough to where that case would apply to the facts of this case."

Contrary to Level One and Winters' contention, the record does not show that BJL Enterprises forced them to vacate the premises. In fact, Winters sent a letter to BJL Enterprises on September 4,

---

[3] (Citations omitted.) *Scott v. Cushman & Wakefield of Ga.*, 249 Ga. App. 264, 265 (547 SE2d 794) (2001).

[4] Id.

[5] Id. at 266; see also *Levinson v. American Thermex*, 196 Ga. App. 291, 292 (1) (396 SE2d 252) (1990) (no recovery based upon unwritten assignment of a promissory note).

[6] (Emphasis in original.)

[7] 297 Ga. App. 104 (676 SE2d 728) (2009).

2007, stating that Level One would be leaving the facility "by the end of October 2007." And, on October 29, 2007, Level One sent another letter to BJL Enterprises indicating, "[t]he utilities have been scheduled to be disconnected on November 9, 2007." Level One sent this letter "as a courtesy, as it intended to have vacated the Premises by that date." Based on these facts, the jury was authorized to conclude that BJL Enterprises did not force Level One and Winters to vacate the premises when Lunsford hired a locksmith on November 9, 2007 to change the locks on the premises.

Viewing the record in the light most favorable to BJL Enterprises, as the party opposing the motions for directed verdict, we find sufficient evidence supporting the jury's verdict that the lease was not terminated and that Level One and Winters owed BJL Enterprises for past due rent. The trial court did not err in denying Level One and Winters' motions for directed verdict.

2. Level One and Winters contend the trial court erred in failing to let them challenge the attorney fees evidence proffered by BJL Enterprises. We find no error.

The record shows that during Level One and Winters' cross-examination regarding BJL Enterprises' attorney fees, the trial court twice warned their attorney not to go into the substance of pre-trial motions or trial court rulings. Despite these admonishments, counsel continued to ask questions related to the disposition of certain motions. The trial court dismissed the jury, and the following colloquy occurred:

> The Court: You know, you are real close to pushing the big C [contempt] button.
>
> Mr. Dunham: Sir.
>
> The Court: And you know what that button is.
>
> Mr. Dunham: Yes, sir.
>
> The Court: Now, we are not going into motions and substance of motions and rulings on motions for one reason. First of all, the jury has no business knowing how I ruled or what facts were decided by the Court in any matter pending before this Court today. It's not their business. It's not their problems. That's the reasons they're called pre-trial motions. They're all done without the jury being present.
>
> Mr. Dunham: Yes, sir.
>
> The Court: We don't retry those motions even though you may not agree with what Counsel says his attorney's fees are. I don't think I've ever seen one lawyer attack another lawyer the way you have this lawyer concerning his attorney's fees. Yes, he withdrew some motions to compel be-

cause you agreed to provide it. Were you going to tell the jury that? . . . I remember that motion in particular. You all agreed that you could work it out between you. Am I remembering correct?

Mr. Dunham: Yes, Your Honor.

The Court: And you are going to make it look like he's the bad guy? And that he's billing or over billing for that? We had to get here in the courtroom before he ever got that discovery.

Mr. Dunham: Both sides agreed to —

The Court: Do you really want me to, you know, I've been fairly calm and reserved during this trial, but you're really beginning to push on the C button. You're kind of inviting me to show you that I'm in charge of this courtroom and these proceedings.

Mr. Dunham: Yes, Your Honor.

The Court: And you violate one of my rulings and I'll have no reservations about locking you up.

Mr. Dunham: Yes, sir. . . .

The Court: Now do you have any more questions that you want to ask of this Counsel in front of this jury?

Mr. Dunham: No, Your Honor, I do not.

We reject Level One and Winters' argument that the trial court impermissibly limited their right to cross-examination regarding attorney fees.

"Although a party has the right to a thorough and sifting cross-examination, the trial court has discretion to limit the scope of cross-examination."[8] Controlling the nature and scope of cross-examination is a matter within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion.[9] Here, the trial court warned counsel a number of times not to discuss the disposition of pre-trial motions and rulings, but counsel continued to ask questions regarding those topics. The trial court did not abuse its discretion in controlling the nature and scope of the cross-examination.

Moreover, a litigant cannot submit to a ruling and then complain of the same on appeal; he must stand his ground.[10] Here, the trial court did not tell Level One and Winters' counsel that he could not

---

[8] (Citation omitted.) *Woodland Partners Ltd. Partnership v. Dept. of Transp.*, 286 Ga. App. 546, 548 (2) (650 SE2d 277) (2007).

[9] Id.

[10] See *Norman v. Ault*, 287 Ga. 324, 329 (3) (695 SE2d 633) (2010).

question BJL Enterprises' attorney regarding his attorney fees, the trial court merely limited the scope of the cross-examination. Nevertheless, Level One and Winters' attorney chose to discontinue questioning BJL Enterprises' attorney. Under these circumstances, Level One and Winters were not denied their right to cross-examine BJL Enterprises' attorney, they simply did not exercise that right.[11] Consequently, Level One and Winters have waived their ability to complain on appeal.

3. Level One and Winters maintain the trial court erred in failing to reduce the amount of attorney fees awarded against Level One pursuant to OCGA § 13-1-11. We agree.

The Supreme Court of Georgia has specifically held that OCGA § 13-1-11, which limits the amount of attorney fees that can be recovered in contract cases, applies to leases.[12] Here, the jury found that Level One and Winters owed $103,954 in unpaid rent under the lease contract, and it awarded BJL Enterprises $67,734 in attorney fees. Under OCGA § 13-1-11 (a) (1), the maximum recovery under the lease, where the principal owing has been found to be $103,954, is limited to 15 percent of that amount, or $15,593.10. Accordingly, we reverse the trial court's judgment in this regard and remand the case with direction that the trial court enter a new judgment consistent with this opinion.

4. Level One and Winters contend the trial court erred in awarding pre-trial discovery sanctions to BJL Enterprises based on a finding that Level One and Winters withheld documents during discovery. Trial judges have broad discretion in controlling discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion.[13] We find no abuse of discretion in this case.

The record shows that the parties entered into a consent order resolving cross-motions to compel discovery. BJL Enterprises renewed its motion to compel discovery, and the trial court granted the motion and awarded BJL Enterprises $700 in attorney fees. Specifically, the trial court found that Level One and Winters had failed to provide a sworn verification, as required by the consent order, stating that they had "produced all documents in their possession, custody, or control of which they are aware which are responsive to requests propounded upon them . . ." and that they "hold no addi-

---

[11] See generally *Green v. State*, 298 Ga. App. 17, 24 (5) (679 SE2d 348) (2009) (where counsel declines to cross-examine witness, party cannot complain of denial of right to cross-examination on appeal).

[12] *RadioShack Corp. v. Cascade Crossing II*, 282 Ga. 841, 845-846 (653 SE2d 680) (2007).

[13] *Daniel v. Corporate Property Investors*, 234 Ga. App. 148 (505 SE2d 576) (1998).

tional documentation including, without limitation, documents in connection with the Asset Purchase Agreement. . . ." The trial court noted that during oral argument on the motion to compel, Level One and Winters admitted they were withholding documents responsive to BJL Enterprises' requests, but argued that the requests were overbroad and oppressive, an argument precluded by the consent order. In addition, while the trial court excluded income tax returns from production, it reminded Level One and Winters that BJL Enterprises' fraudulent conveyance claims survived summary judgment. Indeed, discovery of financial documents was pertinent to the fraudulent conveyance claims. The trial court did not abuse its discretion in granting BJL Enterprises' motion to compel and in imposing sanctions against Level One and Winters for their failure to comply with the consent order.

*Judgment affirmed in part and reversed in part, and case remanded. Miller, C. J., and Phipps, P. J., concur.*

DECIDED JULY 8, 2010 — 

*Gibson, Deal, Fletcher & Dunham, John W. Gibson, Michael R. Dunham*, for appellants.
*John W. Mrosek*, for appellee.