**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 28, 2023**

# In the Court of Appeals of Georgia

A22A1285. CPI-PHIPPS LIMITED LIABILITY COMPANY v. BILLBOARD CORPORATION et al.

MILLER, Presiding Judge.

In this landlord/tenant dispute over a commercial lease, CPI-Phipps Limited Liability Company ("Phipps"), the landlord, seeks review of the trial court's partial summary judgment order concluding that Phipps accepted the tenant's surrender of the premises on a specific date and therefore forfeited any claim to rent after that date. We agree with Phipps that there is at the very least a fact issue as to whether Phipps accepted the tenant's surrender, and therefore whether the parties mutually agreed to terminate the lease, and so we reverse the trial court's grant of partial summary judgment on this issue.

Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. Our review of a trial court's grant of summary judgment is de novo, with all reasonable inferences construed in the light most favorable to the nonmoving party.

(Citations omitted.) *Sirdah v. North Springs Assoc., LLLP*, 304 Ga. App. 348 (696 SE2d 391) (2010).

So viewed, the record shows that, in July 2013, Billboard Corp. entered into a commercial lease agreement with Phipps so that Billboard could operate a restaurant known as "The Tavern at Phipps" at the Phipps Plaza shopping center in Atlanta, Georgia. The 2013 lease was a continuation of a series of leases dating back to 1992 between Billboard Restaurant Corp., its predecessors and successors, and Phipps and its predecessors. The lease was for ten years and expired on October 31, 2022. Through a series of name changes and switches to different entities, Billboard eventually changed its name to Tavern Corp.

Tavern Corp. continually operated the restaurant through March 2020. On March 19, 2020, Phipps closed Phipps Plaza due to the onset of the COVID-19 pandemic. The restaurant closed on March 23, 2020. At the time, Tavern Corp. had "all the intent of reopening the restaurant again" at the same location. On May 4, 2020, Phipps reopened Phipps Plaza with multiple restrictions, which included an

elimination of evening operations, blocking access to the parking lots at the mall outside of operating hours, and a reduction in security. The parties then engaged in extensive discussions from April to September of 2020 about how the restaurant could reopen and whether the lease could be amended, but they never reached an agreement. Tavern Corp. ceased paying rent in April 2020.

In October 2020, Tavern Corp. decided to close the restaurant permanently and surrender the lease. On October 3, 2020, Tavern Corp. returned the keys to Phipps via FedEx. Prior to receiving the keys, Phipps did not receive notice from Tavern Corp. that they were surrendering the premises. On October 5, 2020, a Phipps representative sent Tavern Corp. an email stating that "we were and still are willing to work with you to keep the unit open." On October 16, 2020, Phipps sent Tavern Corp. a letter acknowledging that Tavern Corp. had vacated the premises and stating that Tavern Corp. had 14 days to remove all of its personal property from the premises before it would deem the property abandoned. On October 28, 2020, Tavern Corp. reached out to Phipps to coordinate the removal of the outside signage that was installed at Phipps Plaza, but Phipps denied access to the sign and forbade removal of the signage. In an internal email, a Phipps employee stated that "[Phipps] ha[s] possession of Tavern effective 10/28/20." After this point, Phipps stopped sending Tavern a monthly

3

billing statement for rent. Phipps has since not used the Tavern space for any other purpose, nor has it changed the condition of the space or re-let the space to a new tenant.

Phipps filed the instant lawsuit against Billboard Corp. and its related entities,[1] seeking to recover past due rent, future rent payments, and attorney fees and costs from Billboard and its individual officers and managers. Tavern Corp. answered the complaint and filed counterclaims against Phipps for breach of contract, constructive eviction, and attorney fees. Tavern Corp. filed a motion for partial summary judgment, arguing in part that it was not liable for rent after October 28, 2020, because Phipps had accepted their surrender of the premises on that date.[2]

Following a hearing,[3] the trial court granted in part the defendants' motion for partial summary judgment. The trial court concluded that the evidence was undisputed that Phipps accepted the surrender of the property on October 28, 2020,

---

[1] For ease of reference, we will refer to these entities collectively as "Tavern Corp."

[2] Tavern Corp. also argued that it was not liable for rent from March to May 2020 when Phipps had closed down the mall and that Phipps had no case against various secondary defendants. The trial court's ruling as to these arguments are not part of this appeal.

[3] The record does not contain a transcript of the hearing.

because Phipps took exclusive possession of the property as of that date and then exercised control over the premises inconsistent with Tavern Corp.'s right of occupation by preventing them from returning to retrieve property such as the signs. As a result, the trial court concluded that, as a matter of law, the defendants were not liable for rent after that date.[4] This appeal followed.

In its sole enumeration of error on appeal, Phipps argues that the trial court erred by granting partial summary judgment on its claim for rent due after October 28, 2020. Phipps argues that a surrender of the premises must be mutually agreed upon between the landlord and tenant so as to terminate a lease and that the evidence was at best inconclusive to show that Phipps had an intent to terminate the lease on October 28, 2020. We agree.

> In landlord-tenant law, surrender exists when the tenant voluntarily gives up possession of the premises prior to the full term of the lease and the landlord accepts possession with intent that the lease be terminated. It differs from abandonment, as applied to leased premises, inasmuch as the latter is simply an act on the part of the lessee alone.

---

[4] It appears that all other claims and counterclaims in this case, including Phipps' claim for unpaid rent before October 28, 2020, remain pending.

(Punctuation omitted.) *Marvin Hewatt Enterprises, Inc. v. Butler Capital Corp.*, 328 Ga. App. 317, 319 (2) (761 SE2d 857) (2014) (physical precedent only) (citing Black's Law Dictionary (6th ed. 1990)). "To show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved." *Circle K Stores v. T.O.H. Assocs., Ltd.*, 318 Ga. App. 753, 757 (2) (734 SE2d 752) (2012). In addition,

> [i]t has long been the rule in Georgia that a surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them. Where a landlord exercises a control over the premises inconsistent with the tenant's right of occupation, he thereby discharges the tenant from liability for future rent, and a cancellation or rescission of the contract is thus effected by agreement of the parties, express or implied.

(Citations and punctuation omitted.) *Savannah Yacht Corp. v. Thunderbolt Marine*, 297 Ga. App. 104, 111 (2) (676 SE2d 728) (2009). In short, "[t]here must be either an express agreement to the surrender of possession on the part of the tenant, or such circumstances as compel the conclusion that the landlord consented to retake possession of his property." (Citation omitted.) *Meek v. Mallory & Evans, Inc.*, 318 Ga. App. 407, 409-410 (2) (734 SE2d 109) (2012).

6

Because we do not find that the circumstances here "compel" the conclusion that Phipps agreed to the surrender of the property, we conclude that there is at least a fact issue as to whether Phipps accepted Tavern Corp.'s surrender of the lease. As an initial matter, the record is undisputed that Tavern Corp.'s original surrender of the keys and the premises on October 3, 2020, was unilateral and that Tavern Corp. did not provide notice to Phipps of the surrendering of the keys before they were sent in the mail. Phipps' receipt of the keys thus did not amount to an unequivocal acceptance of Tavern Corp.'s surrender of the premises at that time. See *Sirdah*, supra, 304 Ga. App. at 351 (1) ("The mere taking of the keys to the leased premises by a landlord does not give rise to an inference that the landlord accepted surrender of the premises.").

Nor can we say that Phipps' subsequent actions, as a matter of law, showed an implied intent to accept surrender or terminate the lease. First, Phipps' letter stating that it would deem Tavern Corp.'s personal property abandoned if Tavern Corp. did not collect it within 14 days does not automatically show that Phipps was taking possession of the property in a way that was inconsistent with the continuation of the lease or tenancy. In many situations, we have held that a landlord did not accept a tenant's surrender as a matter of law when it took actions to protect the property and

7

dispose of the tenant's personal property after a tenant voluntarily abandoned the premises. See *Level One Contact, Inc. v. BJL Enterprises, LLC*, 305 Ga. App. 78, 80-81 (1) (b) (699 SE2d 89) (2010) (landlord did not accept the surrender of the premises as a matter of law when it changed the locks after the tenant voluntarily vacated the premises); *Lawson v. Crawford*, 220 Ga. App. 447 (469 SE2d 507) (1996) (factfinder at a bench trial was entitled to find no surrender of the premises when, in part, after the tenants vacated the premises, landlord "subsequently entered the premises and cleared out the mess [the tenant] left"). Moreover, as Phipps argues, the terms of the lease allowed for Phipps, upon Tavern Corp.'s default[5] and upon notice to Tavern Corp., to "re-enter and take possession of the Premises, remove all . . . property from the Premises, . . . and sell such property[.]" Thus, a reasonable factfinder could conclude that, rather than attempting to terminate the lease, Phipps was seeking to instead utilize its remedies under the lease rather than impliedly seeking a cancellation or rescission of the contract.

---

[5] The lease defined default, in part, as when the "Tenant abandons or vacates or fails to do business in the Premises," and because there was evidence that Tavern Corp. had abandoned the Premises, see *Erfani v. Bishop*, 251 Ga. App. 20, 22 (1) (c) (553 SE2d 326) (2001) ("When the tenant vacates the premises prior to the end of the term, this constitutes an abandonment of the tenancy."), there was therefore evidence to show that Tavern Corp. was in default of the lease.

Further, the fact that Phipps refused to allow Tavern Corp. on the premises to remove the exterior signage does not automatically show that Phipps exercised control over the premises inconsistent with Tavern Corp.'s right of occupation. As Phipps points out, the lease provided that the "exterior and exterior walls" where the sign was located was not part of the leased premises, and the lease also provided that Tavern Corp. had to obtain permission from Phipps for its signage and to make any adjustments to the signage. Thus, Phipps' actions in denying access to Tavern Corp. to remove the signage do not necessarily evince that Phipps exercised any control of the leased premises beyond what it was already entitled to do under the lease. Moreover, a reasonable factfinder could reason that, by keeping the sign advertising the Tavern restaurant up and visible to the public, Phipps was still keeping the option open for Tavern Corp. to return to the tenancy in the future. This interpretation is supported by the October 5, 2020 email from Phipps stating, after Tavern Corp. voluntarily surrendered its keys, that "we were and still are willing to work with you to keep the unit open."

Furthermore, the internal email from a Phipps employee stating that Phipps had "possession" of the Tavern space after October 28, 2020, does not automatically show that Phipps accepted surrender because

9

under well-settled principles of Georgia law, a landlord's possession of premises abandoned by a tenant does not constitute an acceptance of a surrender of the premises—or, as here—abandonment by the tenant. In such circumstances the landlord has the option of (1) terminating the lease, (2) obtaining another tenant while holding the original tenant liable for any deficiency that may occur, or (3) permitting the premises to remain vacant while collecting the agreed-upon rent from the original tenant.

(Citation and punctuation omitted.) *Meek*, supra, 318 Ga. App. at 410 (2). Because there is evidence in the record showing that Phipps has not re-let the Tavern space to another tenant and has let the space remain vacant, a reasonable factfinder could conclude that Phipps intended to choose option three in that list.

Additionally, the fact that Phipps no longer sent monthly billing statements to Tavern Corp. after it vacated the premises is also not conclusive. Finally, the facts here are materially distinguishable from situations where we found the landlord accepted the surrender as a matter of law. See, e.g., *Savannah Yacht Corp.*, supra, 297 Ga. App. at 112 (2) (acceptance of surrender found as a matter of law where landlord forced the tenant to vacate the property and then commenced its own business on the same property).

Considering all the circumstances of this case, we cannot conclude that, as a matter of law, Phipps accepted Tavern Corp.'s surrender of the property on October 28, 2020, and thereby ended Tavern Corp.'s liability to pay rent under the lease. We therefore reverse the trial court's grant of partial summary judgment on this issue.

*Judgment reversed. Rickman, C. J., and Pipkin, J., concur.*