A99A2240. CAPITOL MATERIALS, INC. v. KELLOGG & KIMSEY, INC.

(530 SE2d 488)

MILLER, Judge.

The following undisputed chronology is relevant to the disposition of this appeal from the grant of summary judgment refusing to enforce an alleged settlement agreement resolving a claim of lien.

On January 16, 1997, Capitol Materials, Inc. filed a lien against Lot 948 of the 17th District, Second Section of Cobb County, Georgia, for materials provided as of October 18, 1996, to a subcontractor in the construction of a Barnes & Noble bookstore. This lien was ostensibly against the real property of Nazemian Properties Associates. On January 23, Capitol filed a purported amendment to its lien against Lot 948, changing the name of the owner of the real property against which the lien was asserted to BN Development Company LLC ("Owner"), and also giving a different description of the boundaries to Lot 948. A month later, Capitol filed a cancellation of the original January 16 lien. On February 25, Ira L. Rachelson, counsel for Capitol, submitted a written proposal to the Owner, offering to settle the combined claims of Capitol and the subcontractor "for the amount owed Capitol." In return, Capitol would "deliver the appropriate lien waivers, releases and satisfactions."

In subsequent negotiations with the general contractor, Kellogg & Kimsey, Inc., its counsel, Anthony S. Cabrera, offered to pay $36,000 to release the lien, and Rachelson countered with an offer to accept $38,000. After further discussion, Rachelson believed he reached an oral agreement to settle Capitol's claim for $37,250 in exchange for a release of all claims of lien. Cabrera relayed that amount to Kellogg & Kimsey, and on March 17, Harry Rodriguez, Kellogg & Kimsey's controller, authorized a check in that amount payable to Capitol. On March 19, Rachelson sent Cabrera a letter purporting to confirm the agreement and its terms. But the time for performance of this settlement agreement came and went without payment. Responding to Rachelson's inquiries, Cabrera wrote back on March 24, denying the existence of a complete settlement agreement, and giving the following reasons:

> While an amount for which our clients would be willing to compromise the claim of lien was discussed, various items including the forms of the release documents, the release of

[Capitol's] claim of lien, etc., related to a resolution of this matter remained open. Of particular significance is that throughout our various discussions, it was our understanding that [Capitol] had otherwise recorded a valid claim of lien on the project. . . . Further investigation has concluded that the [January 16] claim of lien may have been recorded on the wrong real property.

Cabrera first became aware that Capitol might not have a valid lien against the Owner's property sometime after his last conversation with Rachelson, and this March 24 letter was the only time he communicated to Rachelson any doubts about the validity of the lien. Kellogg & Kimsey's continued failure to pay resulted in the instant action for breach of contract and for enforcement of the settlement agreement in the principal sum of $37,250. After discovery, Capitol moved for partial summary judgment to enforce the settlement agreement. Kellogg & Kimsey also moved for summary judgment, contending that no enforceable contract was reached because of: (1) a lack of consideration; (2) no meeting of the minds; (3) misrepresentations of fact; and (4) the statute of frauds. The trial court denied Capitol's motion while granting that of Kellogg & Kimsey, and Capitol appeals that ruling.

1. *Lack of consideration.* Capitol's attempted amendment of its lien after the three-month period allowed by OCGA § 44-14-361.1 (a) (2) is ineffectual under the authority of *Shirah Contracting Co. v. Waite.*[1] But the ultimate invalidity of Capitol's materialman's lien would not be a valid basis for reneging on an existing settlement agreement compromising Capitol's $42,320 claim for payment of the lesser sum of $37,250. Forbearance to prosecute a legal claim and the compromise of a doubtful right are both sufficient consideration to support a contract.[2] "If the requirement of consideration is met, there is no additional requirement of a gain, advantage, or benefit to the promisor or of a loss, disadvantage, or detriment to the promisee."[3] Thus, where parties have conflicting claims, depending upon a law point, and they compromise them, each is bound by the settlement, whether the law point turns out to have been for it or against it.[4] The grant of summary judgment on behalf of Kellogg & Kimsey cannot be sustained on the ground there was no valid consideration.

2. *Misrepresentation.* As the factual basis for the alleged misrep-

---

[1] 143 Ga. App. 355, 356 (1) (238 SE2d 728) (1977).

[2] *Austell v. Rice*, 5 Ga. 472, hn. 3 (1848).

[3] OCGA § 13-3-43.

[4] *Morris v. Munroe*, 30 Ga. 630 (1860). Accord *Tyson v. Woodruff*, 108 Ga. 368 (33 SE 981) (1899).

resentation, Cabrera testified he "never questioned whether the lien was valid or not; [he] assumed it was," based upon the assertions of Rachelson. But upon inspection of the original documents (after his negotiations with Rachelson), Cabrera concluded that the underlying claim of lien might be invalid because the untimely amendment was, in his professional judgment, a nullity, while the original timely claim was filed against the wrong property and, in any event, had been canceled by Rachelson.

Under OCGA § 13-4-60, a contract may be rescinded at the instance of the party defrauded.[5] But a claim of fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.[6] Consequently, any alleged misrepresentation about the legal validity of Capitol's untimely amended lien or its timely-but-canceled original lien cannot provide a basis for rescinding the alleged settlement agreement. Similarly, a unilateral mistake based upon defendant's negligence in failing to determine the facts would not justify defendant's failure to perform under OCGA § 13-5-4.[7]

3. *Meeting of the minds.* Whether a settlement is an enforceable agreement is a question of contract law for the trial court, but an appellate court owes no deference to its conclusions.[8] "No contract exists until all essential terms have been agreed to. OCGA § 13-3-2."[9] Cabrera indicated that there was no meeting of the minds because the forms of the lien releases had not been negotiated. In our view, this does not render the alleged agreement incomplete.

The essential terms to this alleged settlement agreement are the parties, the amount acceptable to both, and the prompt release of all claims of lien against the property, as demanded by the Owner. Capitol's original offer to settle the pending lien claim "necessarily contained [the] implied promise to execute some instrument *terminating the controversy* as to that settling defendant. . . ."[10] After negotiations, Cabrera did not expect to be further involved because the precise close-out forms would be supplied by Kellogg & Kimsey itself, and not his law firm. Capitol had always promised to release its liens, and Rachelson's March 19 letter indicates that Capitol promised to give every further assurance asked of it in terms of lien waivers, so long as Capitol did not thereby waive any contractual claim it

[5] This remedy presupposes the existence of contract, for the agreement is not void but only voidable at the instance of the defrauded party. *Jordy v. Dunlevie*, 139 Ga. 325, 329 (2) (77 SE 162) (1913).

[6] *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538, 543 (2) (246 SE2d 660) (1978).

[7] *Mangham v. Hotel &c. Supply Co.*, 107 Ga. App. 619 (1) (131 SE2d 74) (1963).

[8] *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 749-750 (1) (525 SE2d 118) (1999).

[9] *Bridges v. Bridges*, 256 Ga. 348, 349-350 (1) (349 SE2d 172) (1986).

[10] (Emphasis supplied.) *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199) (1994) (whole court).

had against the defaulting subcontractor. Consequently, there remained nothing to negotiate in terms of the *forms* necessary to effectuate the settlement. Capitol had already agreed to whatever was necessary to satisfy Kellogg & Kimsey. The trial court erred in concluding there was no meeting of the minds as to every essential term of the alleged settlement agreement, due to an alleged lack of agreement as to the forms required.

4. *Statute of Frauds*. Although defendant's answer denied the specific allegation that it had agreed to pay $37,250 to release Capitol's claim of lien, Rodriguez, the controller for Kellogg & Kimsey, confirmed that defendant had been instructed by the Owner to obtain satisfaction of all liens or get any liens bonded off the realty in order to clear title. Rodriguez informed the Owner that the Capitol liens specifically "were settled and [Kellogg & Kimsey] would get a satisfaction of lien." As early as March 17, Rodriguez ordered a check to be issued for the amount of $37,250 as payment to settle the claims of Capitol. On March 19, Rodriguez forwarded to the Owner final releases of liens or liens transferred to bonds affecting 11 subcontractors and suppliers, including Capitol, although ultimately it appeared Capitol had no timely lien attached to the realty requiring a bond to clear title.

Generally, in order to be binding on the promisor, a promise to answer for the debt of another must be in writing and signed by the party to be charged.[11] But oral settlements, if established by the writings of the attorneys, are enforceable.[12] The writings envisioned by the General Assembly in enacting OCGA § 15-19-5 serve the same purpose as the Statute of Frauds by addressing the question of the existence of an agreement or its terms,[13] even though that Code section does not require the signature of the party to be charged. A satisfactory writing ideally consists of a formal written agreement signed by the parties, but letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.[14]

In this case, we have the unusual circumstance that the attorneys cannot agree on the legal consequences of their actions, that is, whether a binding contract was reached, yet Kellogg & Kimsey's controller told the Owner that this particular lien claim was settled and authorized a check for the amount allegedly agreed upon, after Cabrera relayed that information. There are only two rational infer-

---

[11] OCGA § 13-5-30 (2). But see *Pope v. Triangle Chem. Co.*, 157 Ga. App. 386, 389 (3) (b) (277 SE2d 758) (1981) (promise required by this Code section to be in writing does not include an original undertaking).

[12] *Abrams v. Abrams*, 262 Ga. 170, n. 1 (416 SE2d 88) (1992).

[13] *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (2) (308 SE2d 544) (1983).

[14] *Tidwell v. White*, 220 Ga. App. 415, 417 (2) (469 SE2d 258) (1996).

ences authorized by this sequence of events: (1) Cabrera informed Rodriguez that Capitol offered to settle for $37,250, and that amount was accepted; or (2) Kellogg & Kimsey offered to pay $37,250 and Rachelson's March 19 letter was an acceptance. Pretermitting whether Rodriguez's statements and actions amount to an estoppel, they do objectively corroborate the existence of an agreement as outlined in Rachelson's March 19 letter and are inconsistent with the absence of an agreement. Stripped of its legal conclusions, Cabrera's March 24 letter is not inconsistent with the assertion that $37,250 was fixed as the acceptable figure and would be too late to revoke an offer accepted on March 19. In our view, this is a case where an agreement as to terms was clearly made and then someone changed his mind and no longer wanted to settle the case.[15] The trial court erred in denying Capitol's motion for partial summary judgment.

5. Kellogg & Kimsey's motion for frivolous appeal sanctions under Court of Appeals Rule 15 (b) is denied.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 2, 2000 — 

*Rachelson & White, Ira L. Rachelson,* for appellant.
*James B. Gurley,* for appellee.

---

[15] See *Brumbelow v. Northern Propane Gas Co.*, 169 Ga. App. 816 (315 SE2d 1) (1984) (on remand from 251 Ga. 674, supra). Compare *Bridges v. Bridges,* supra, 256 Ga. at 350 (1).
[1] The appellee has since remarried and is now Joyce Jackson.