A05A0376. POURREZA v. TEEL APPRAISALS & ADVISORY, INC.

(616 SE2d 108)

SMITH, Presiding Judge.

This appeal arises out of the trial court's order granting a motion to enforce a settlement agreement. As more fully discussed below, because we agree with the trial court that the parties entered into a valid enforceable agreement to settle, we affirm.

Fatemeh Pourreza entered into a purchase and sale agreement for a parcel of real property in Fulton County in January 2003. She subsequently brought this action against the seller, Bank One Corporation, and Jeff Peargin, the real estate agent who listed the property. She alleged among other things that Bank One and Peargin misrepresented to her that the property was not located in a flood plain. Teel Appraisals & Advisory, Inc. (Teel) was also named as a defendant. Pourreza alleged that Teel failed to inform her that the property was located in a flood plain. On November 14, 2003, on motion by Pourreza, the trial court entered an order dismissing Bank One and Peargin with prejudice. Teel filed a "motion to enforce

settlement" on November 18, 2003, contending that it had entered into an enforceable settlement agreement with Pourreza, in which Pourreza had agreed to dismiss the action against Teel in exchange for Teel's agreement not to seek attorney fees.

In support of the motion, Douglas Smith, the attorney retained by Teel's liability insurer, submitted his own affidavit, along with correspondence between counsel for the parties. He testified that at some time between September 18 and 22, 2003, he spoke with Kim Knight Perez, one of Pourreza's attorneys, who told him that Pourreza had agreed to dismiss her complaint against all defendants with prejudice if the defendants would agree to waive their attorney fees. Pourreza's lead counsel was Vaughn Fisher. On September 24, 2003, Smith sent Fisher a letter via facsimile which "constitutes our acceptance of plaintiff's offer to dismiss her claims against my client with prejudice in consideration of . . . Teel Appraisal Inc.'s waiver of any claims for attorney's fees under any applicable law." Smith further stated in the letter, "I believe this letter sufficiently memorializes our agreement, but if you believe any other documents need to be executed, please let me know."

Smith's affidavit states that Fisher responded to Smith's letter later on September 24. Fisher informed Smith by telephone that he wanted Teel "to execute a settlement agreement rather than just relying on [Smith's] letter to him." At Smith's instruction, Fisher e-mailed a proposed settlement agreement to Smith on September 24, 2003. That agreement required the parties to release one another from "any and all claims," and to agree that they would not bring claims against each other or their attorneys for claims arising out of the litigation, including but not limited to claims arising out of OCGA § 9-15-14 or § 51-7-80 et seq. The proposed agreement recited further: "Upon the execution of this agreement by Ms. Pourreza and Teel Appraisals, they agree to execute and file the mutual voluntary dismissal with prejudice of all claims against each other in the litigation."

Without making any changes, Smith printed out the settlement agreement and sent two originals to Gordon Teel, principal of Teel Appraisals, with instructions for execution of the documents. The mailing to Mr. Teel was returned because it had not been correctly addressed. The documents were then sent to Mr. Teel at his correct address. Smith was out of town the week of October 11, 2003, and when he returned to his office on October 17, he reviewed a letter from Pourreza's counsel dated October 14, 2003, "advising that his client was revoking any settlement with my client." On October 20, Smith sent Fisher "a response detailing my opinion that the matter had, in fact, fully settled as to our clients." On October 29, Smith received

from Mr. Teel "two executed original Settlement Agreements . . . bearing the date of October 15, 2003."

Fisher and Perez submitted their own affidavits in response to Teel's motion. In her affidavit, Perez stated that she proposed a settlement agreement to Smith by telephone on September 19, 2003. She told Smith that Pourreza "was willing to offer to Mr. Smith's client the same agreement that she offered to the other defendants, which offer included a covenant not to sue." She stated further in the affidavit that she never stated or implied that a covenant not to sue was the only consideration for the offer to settle or that the covenant was the only essential term of the proposed settlement. In Fisher's affidavit, he described his September 24 telephone conversation with Smith. He stated that "[d]uring the phone conversation I told [Smith] that my client would be willing to make the same offer that she had made to defendants Bank One and Mr. Peargin" and that they "did not discuss all of the terms, nor was there an offer and acceptance of a settlement." We note, however, that neither Fisher nor Perez specifically controverted Smith's affidavit testimony, discussed above, that Perez had told Smith of Pourreza's willingness to settle with all defendants in exchange for the defendants' waiver of attorney fees.

The trial court concluded that the parties entered into a binding settlement and granted Teel's motion. The court stated that Perez made "an offer of settlement of a dismissal with prejudice in exchange for a covenant not to sue" and that "Smith's September 24 letter to Mr. Fisher constituted an unequivocal acceptance of that offer." Pourreza appeals.

In considering whether an enforceable settlement agreement was created, we are guided by the following well-established principles set out in *Herring v. Dunning*, 213 Ga. App. 695 (446 SE2d 199) (1994):

> Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in [this case] would have been the product of the attorneys for the parties. As the existence of a binding agreement is disputed, the proponent of the settlement must establish its existence in writing. The writing which will satisfy this requirement ideally consists

of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Citations and punctuation omitted.) Id. at 696-697.

Smith's September 24 letter memorialized the parties' oral agreement to settle. The essential terms of the agreement were clear: In exchange for Pourreza's agreement to dismiss the lawsuit with prejudice, Teel agreed not to seek attorney fees. It is true that in the September 24 acceptance letter Smith asked Fisher to "let me know" if other documents were necessary. But as stated by the trial court, this was not a counteroffer; the essential terms of the agreement were not changed, and the acceptance was not conditioned on the occurrence of any other events. Fisher may have contemplated the possibility of execution of further documents, but his recognition of this possibility in the acceptance letter was "merely precatory. Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction." (Citation and punctuation omitted.) *Herring*, supra at 699. As stated by Teel on appeal, the proposed settlement agreement "is broadly worded, includes the specific terms of the settlement, and unambiguously shows Mr. Fisher's acknowledgement that a settlement between his client and Teel Appraisals had been reached."

We recognize that after Smith's acceptance of the offer, Fisher stated that Pourreza desired the execution of a formal written settlement agreement and sent a proposed agreement to Smith. But this did not change the fact that on September 24, the parties entered into "[a] mutual, binding agreement. . . . Thereafter, the drafting of documents necessary to effectuate the settlement may have been a condition of the performance but it was not an act necessary to acceptance of the offer to settle." (Citations, punctuation and footnote omitted.) *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139, 142 (2) (589 SE2d 711) (2003). We note further that Pourreza's attempted October 14 revocation of her offer does not require reversal. Again, a binding agreement occurred on September 24, and nothing in that agreement, or even in the subsequent written proposed settlement agreement, specified that a written agreement would be executed "by a date and time certain or that time was of the essence. [Cit.]" *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998). As stated in *Capitol Materials v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584 (530 SE2d 488) (2000), this is simply "a case where an agreement as to terms was clearly made and then someone changed [her] mind and no longer wanted to settle the case." (Citations and footnote omitted.) Id. at 588 (4). The trial court did not err in granting Teel's motion to enforce the settlement agreement.

We note Pourreza's argument that Teel failed to submit a statement of material facts as to which there is no dispute, under Uniform Superior Court Rule 6.5. This contention was not raised below and is waived on appeal. See *Stanford v. City of Manchester*, 246 Ga. App. 129, 132-133 (539 SE2d 845) (2000).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 9, 2005 —
RECONSIDERATION DENIED JUNE 23, 2005 — 

*Weizenecker, Mottern & Fisher, Vaughn W. Fisher, Jr., Bernard A. Pfeiffer, Kimberly K. Perez*, for appellant.

*Mozley, Finlayson & Loggins, Douglas G. Smith, Jr.*, for appellee.