**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A2221, A13A2222. CUMBERLAND CONTRACTORS, INC. ET AL. v. STATE BANK AND TRUST COMPANY; and vice versa.

MILLER, Judge.

State Bank and Trust Company, Inc. ("State Bank"), as successor to the original lender, sued Cumberland Contractors, Inc. and Michael and Lucy Thomas (collectively, the "Defendants") to recover amounts owing on several promissory notes and guarantees. The Thomases filed counterclaims for invasion of privacy and intentional infliction of emotional distress. The trial court dismissed these counterclaims and also denied the Defendants' motion to enforce a settlement agreement. At trial, the Defendants moved for a directed verdict, and the trial court denied their motions. The trial court entered a judgment in State Bank's favor

following the jury's verdict. After the Defendants filed a notice of appeal, State Bank filed a motion for supersedeas bond, which the trial court denied.

In Case No. A13A2221, the Defendants contend that the trial court erred in: (1) granting State Bank's motion in limine ruling that State Bank was the real party in interest to sue on the notes and guarantees; (2) dismissing the Thomases' counterclaims; (3) denying their motion to enforce a settlement agreement; (4) denying their motion for a directed verdict on collection of the promissory notes; (5) denying their motion for a directed verdict as to State Bank's claim for attorney fees; and (6) charging the jury on the doctrine of holder in due course. In Case No. A13A2222, State Bank contends that the trial court erred in denying its motion for supersedeas bond.

Since the evidence shows that the parties entered into a binding settlement agreement prior to trial, we reverse the trial court's judgment in Case No. A13A2221. We affirm the trial court's denial of State Bank's motion for supersedeas bond in Case No. A13A2222.

> [O]n appeal from the denial of a motion for a directed verdict . . . , we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. However, we review questions of law de novo[.]

2

(Punctuation and footnotes omitted.) *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 813 (720 SE2d 270) (2011).

So viewed, the evidence shows that Michael and Lucy Thomas owned and were officers of Cumberland Contractors. Michael served as the Chief Executive Officer and Chief Financial Officer, and Lucy served as the company's secretary. From the time of the formation of Cumberland Contractors, Michael borrowed money from several banks. Beginning in 2005, Michael borrowed money from Security Bank of Bibb County ("Security Bank") to purchase lots in the Youngwood subdivision. By June 2009, the Thomases had not repaid all of the money they borrowed from Security Bank.

On June 26, 2009, the Defendants entered into four different loan agreements with Security Bank. Michael and Lucy executed a renewed promissory note ("Note 1") in the principal amount of $650,000 plus interest. Cumberland Contractors renewed a promissory note ("Note 2") with Security Bank for the principal amount of $1,075,000 plus interest. Michael and Lucy signed Note 2 on behalf of Cumberland Contractors, and they also executed personal guarantees on that note. The Defendants also entered into an additional loan agreement and executed a promissory note in the principal amount of $100,000 plus interest ("Note 3"), while

Michael and Lucy executed a fourth promissory note in the amount of $200,000 plus interest ("Note 4"). All four notes had a maturity date of July 26, 2010.

In July 2009, Security Bank closed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for Security Bank. Through a purchase agreement, FDIC assigned its interests in the subject notes, the related guarantees, and other related loan agreements to State Bank. State Bank also acquired Security Bank's loan accounting system, which provided loan histories on the subject notes. After the Defendants defaulted on the four promissory notes, State Bank accelerated the amounts due, sent notices of default, and then filed the instant lawsuit seeking to enforce the promissory notes and related guarantees. At trial, State Bank presented the testimony of one of its portfolio managers, who testified as custodian of the business records relating to the four notes and to the amounts owing on the same. The jury returned a verdict in favor of State Bank. These appeals followed.

### Case No. A13A2121

1. The Defendants contend that the trial court erred in granting State Bank's motion in limine on the issue of whether State Bank was entitled to enforce and collect on the notes. Specifically, the Defendants argue that State Bank did not

introduce evidence showing that there was a valid assignment of the loans to State Bank. We disagree.

We review a trial court's ruling on a motion in limine for abuse of discretion. See *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005).

> The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it. An exception to this requirement of contractual privity occurs when a party assigns another the contractual right to collect payment, including the right to sue to enforce the right. However, to be enforceable by the assignee, such an assignment must be in writing.

(Punctuation and footnotes omitted.) *Level One Contact, Inc. v. BJL Enterprises*, LLC, 305 Ga. App. 78, 80 (1) (a) (699 SE2d 89) (2010). Furthermore, promissory notes are negotiable instruments as defined in OCGA § 11-3-104 (a), which can be transferred "when ... delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." OCGA § 11-3-203 (a). Such a transfer, "whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course[.]" OCGA § 11-3-203 (b); see also *Titshaw v. Northeast Ga. Bank*, 304 Ga. App. 712, 715 (1), n.10 (697 SE2d 837) (2010) ("Assignment of a note

5

means transfer of the title to the instrument so that the recipient may bring an action thereon.") (citation omitted).

Here, at the hearing on the motion in limine, State Bank presented a January 27, 2010 notice from the Federal Register showing that the Security Bank failed and FDIC was appointed as the receiver for Security Bank. The trial court took judicial notice of the Federal Register notice, which it was required to do.[1] *Sims v. Southern Bell Telephone & Telegraph Co., Inc.*, 111 Ga. App. 363, 364 (141 SE2d 788) (1965); see also 44 U.S.C. § 1507.

The evidence further shows that the FDIC was acting as receiver for Security Bank when it assigned the loan documents to State Bank. This evidence includes an affidavit from State Bank's portfolio manager, who testified that she was the records custodian for the bank, the subject notes and guarantees were kept by the bank in its regular course of business, and it was the regular practice of the bank to make records at or near the time of an event or reasonably soon thereafter. The portfolio manager

---

[1] "The role of judicial notice is to eliminate formal proof as to: (1) matters of which the general public has common knowledge; (2) facts which are readily ascertainable by reference to some reliable source, and are beyond dispute; and (3) matters which are within the special province of the judge." (Citations and punctuation omitted.) *Nationsbank v. Tucker*, 231 Ga. App. 622, 623 (1) (a) (500 SE2d 378) (1998).

6

also testified that State Bank had the notes and guarantees in its possession, and that it received these instruments when the FDIC assigned and transferred them pursuant to a Purchase and Assumption Agreement. Moreover, contrary to the Defendants' claims, the written assignment was produced and identified. A copy of that agreement was attached to portfolio manager's affidavit, and the agreement identifies the FDIC as receiver of Security Bank. Liberally interpreting and applying the former provisions of OCGA § 24-3-14 (b),[2] we hold that State Bank established that the affidavit and attached exhibits were admissible as business records. See *Melman v. FIA Card Servs., N.A.*, 312 Ga. App. 270, 271-272 (1) (a) (718 SE2d 107) (2011) (business documents attached to affidavit, which stated that the affiant was familiar

---

[2] Former OCGA § 24-3-14 (b) provided:

Any writing or record ... made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

The provisions of former OCGA § 24-3-14 (b) are to be liberally interpreted and applied. See *Angel Bus. Catalysts, LLC v. Bank of the Ozarks*, 316 Ga. App. 253, 256 (1), n.3 (728 S.E.2d 854) (2012).

7

with the company's business records and that the company's regular course of business was to make records at or near the time of event, were admissible). As a result, the trial court did not err in finding that State Bank is the real party in interest, because there was a valid assignment of the loans to State Bank. See *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 197 (1) (715 SE2d 491) (2011) (valid assignment of loan from FDIC to bank where evidence showed that FDIC acted as receiver when it assigned loan documents to bank). Accordingly, the trial court did not abuse its discretion in granting State Bank's motion in limine on this issue.

2. The Defendants also contend that the trial court erred in dismissing the Thomases' counterclaims for invasion of privacy and intentional infliction of emotional distress based upon the publication of their social security numbers in an exhibit attached to the complaint.[3] We disagree.[4]

---

[3] The Thomases also filed a counterclaim for a violation of the Fair Business Practice Act, but they do not challenge the trial court's dismissal of this counterclaim on appeal.

[4] State Bank argued before the trial court, and on appeal, that the exhibit attached to its complaint was protected by absolute privilege afforded pleadings under OCGA § 51-5-8. In support of its argument, State Bank relies upon *Finnerty v. State Bank and Trust Co.*, 301 Ga. App. 569, 569-570 (1) (687 SE2d 842) (2009), which held that the inclusion of the defendant's social security number on a promissory note

A motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. The main consideration of such a motion to dismiss is whether, under the assumed set of facts, a right to some form of legal relief would exist. If material allegations are missing from a pleading, then the pleading fails.

---

did not give rise to a counterclaim for invasion of privacy because the exhibit was protected under OCGA § 51-5-8. While *Finnerty* reasonably concluded that the promissory note was "pertinent and material to the relief sought" in the complaint, within the meaning of OCGA § 51-5-8, we disapprove *Finnerty* to the extent it held that the absolute privilege under OCGA § 51-5-8 barred an invasion of privacy claim. See *Morrison v. Morrison*, 284 Ga. 112, 113 (2) (663 SE2d 714) (2008) (OCGA § 51-5-8 explicitly applies only to libel claims); *Renton v. Watson*, 319 Ga. App. 896, 903 (4), n.4 (739 SE2d 19) (2013). The *Finnerty* Court went on to conclude that the defendant's counterclaim failed as a matter of law for other reasons. See *Finnerty*, supra, 301 Ga. App. at 570-572 (2), (3).

In this case, the trial court's order does not reveal that it relied upon *Finnerty* in dismissing the Thomases' counterclaims, but to the extent it did so, it erred. Nevertheless, State Bank also argued in the trial court that the counterclaims should be dismissed on the alternative ground that the Thomases failed to state a cause of action. Consequently, we may affirm the trial court's ruling under the right for any reason rule. See *Bailey v. Hall*, 267 Ga. App. 222, 223, n. 1 (599 SE2d 226) (2004) (judgment may be affirmed as right for any reason when the judgment may be sustained upon legal basis apparent from the record that was fairly presented in court below).

9

(Citations and punctuation omitted.) *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012). Our review of a trial court's ruling on a motion to dismiss is de novo. *Id*. With these principles in mind, we turn to review the Thomases' counterclaims.

(a) Invasion of Privacy

[T]here are four disparate torts under the common name of invasion of privacy. These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

(Citation and punctuation omitted.) *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 751-752 (2) (740 SE2d 622) (2013).

In this case, the Thomases claimed that the publication of their social security numbers could result in identify theft, credit card fraud, and other offenses that might damage them personally and financially. These allegations do not fall within the causes of action for invasion of privacy because there is no allegation that State Bank (1) intruded into the Thomases' seclusion, (2) disclosed embarrassing private facts, (3) depicted the Thomases in a false light, or (4) appropriated the Thomases' name or likeness for State Bank's own advantage. As a result, the Thomases' counterclaim

10

for invasion of privacy failed to state a claim for relief, and such claim was properly dismissed.

(b) Intentional Infliction of Emotional Distress

Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

(Citations and punctuation omitted.) *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 179 (3) (733 SE2d 457) (2012).

Even assuming that State Bank intentionally or recklessly disclosed the Thomases' social security numbers, thereby causing the Thomases severe emotional distress, it cannot be said that such action was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

11

intolerable in a civilized community." *Racette*, supra, 318 Ga. App. at 179 (3).

Consequently, the counterclaim for intentional infliction of emotional distress was

properly dismissed.[5]

3. The Defendants next contend that the trial court erred in denying their

motion to enforce a purported settlement agreement. We agree.

We apply a de novo standard of review to a trial court's order on a motion to

enforce a settlement agreement, and view the evidence in a light most favorable to the

nonmoving party. *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App.

728 (621 SE2d 755) (2005). "[T]he law favors compromise, and when parties have

entered into a definite, certain, and unambiguous agreement to settle, it should be

enforced." (Punctuation and footnote omitted.) Id. at 729 (1).

> In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case would have been the product of the attorneys for the parties. As the existence of a binding agreement is disputed, the proponent of the settlement must establish its

---

[5]Although we affirm the dismissal of the Thomases' counterclaims, we note that the better practice when suing upon a promissory note is to redact the debtor's social security number from the note in order to avoid the possibility that the debtor is subjected to identity fraud.

12

existence in writing. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties.

(Citation and punctuation omitted.) *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 882-883 (616 SE2d 108) (2005).

In this case, there is no dispute that the parties entered into settlement negotiations regarding State Bank's claims against the Defendants, or that such negotiations led to the preparation of an email from State Bank's portfolio manager assigned to handle the Defendants' loans. That email, dated February 8, 2012, states that the "[s]ettlement has been approved by Committee under the following terms," which were outlined in the email. The email further provided that State Bank's "attorneys are currently drafting the settlement documents." State Bank subsequently sent the settlement documents to the Thomases, but they declined to sign the documents because they believed the terms in the documents were inconsistent with the terms previously agreed upon.

There is no dispute that the February 8, 2012 email memorialized the terms of the agreement that the Defendants seek to enforce. State Bank did not dispute the authenticity of the email or the primary terms of the agreement, only that it was an agreement to agree, citing the language that the settlement documents still needed to

13

be drafted. Notably, however, State Bank concedes that the "parties . . . reached a tentative agreement pending approval of the settlement documents." The February 8, 2012 email does not indicate that the settlement was conditioned upon the parties' approval of settlement documents, and "the drafting of documents necessary to effectuate the settlement may have been a condition of the performance but it was not an act necessary to acceptance of the offer to settle." *Pourreza*, supra, 273 Ga. App. at 883; see also *Mealer v. Kennedy*, 290 Ga. App. 432, 437 (659 SE2d 809) (2008) (the refusal to execute a release acceptable to a party did not obviate the prior agreement to settle). Moreover, the parties' failure to follow through with the agreement did not negate the existence of the agreement or render it unenforceable. See *Commercial Union Ins. Co. v. Marco Transp. Co.*, 211 Ga. App. 844, 845 (1) (440 SE2d 730) (1994). In light of the agreement to settle, the trial court erred in denying the Defendants' motion to enforce the settlement agreement. *Mealer*, supra, 290 Ga. App. at 437. Therefore, we must reverse.

4. In light of our disposition in Division 4, we need not address the Defendants' remaining enumerations of error.

14

5. State Bank contends that the trial court erred when it denied its motion for supersedeas bond. We disagree.

Having received a judgment for the recovery of money, State Bank exercised its statutory right to move the trial court for a supersedeas bond. See *Barngrover v. Hins*, 289 Ga. App. 410, 414 (3) (657 SE2d 14) (2008). The trial court "was obligated to require [the Defendants] to post a supersedeas bond in the full amount of the judgment, including costs, interest, and damages, unless, after notice and hearing, it found good cause for fixing a lesser amount." (Citation omitted.) *Id.*; see OCGA § 5-6-46 (a) (upon motion made in the trial court before or after an appeal is docketed in the appellate court, the trial court shall require a supersedeas bond). However, a pauper's affidavit will relieve the appellant from this necessity, unless the affidavit is traversed and proved untrue. See *Hubbard v. Farmers Bank*, 153 Ga. App. 497, 498 (265 SE2d 845) (1980).

In this case, while State Bank filed a motion for supersedeas bond, the Thomases filed affidavits stating that they and Cumberland Contractors did not have the ability to post such a bond. At the hearing on State Bank's motion, State Bank did not traverse the affidavits or otherwise prove the Thomases' statements to be untrue.

15

Since the trial court's ruling on the ability of the Defendants to post a bond is not subject to review, see *Barham v. Levy*, 228 Ga. App. 594, 596 (4) (492 SE2d 325) (1997), State Bank presents no basis to reverse the trial court's denial of its motion for supersedeas bond.

*Judgment reversed in case No. A13A2221. Judgment affirmed in case No. A13A2222. Phipps, C.J., Andrews, P.J., Barnes, P.J., Ellington, P.J., Doyle, P.J., McFadden, Boggs, Ray, Branch and McMillian, JJ., concur. Dillard, J., disqualified.*