**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**July 2, 2020**

# In the Court of Appeals of Georgia

A20A0377. MILLER et al. v. MILLER.                    DO-013

DOYLE, Presiding Judge.

This appeal challenges the grant of a motion to enforce a settlement agreement and the denial of a non-party's motion to intervene. Finding no reversible error, we affirm the order enforcing the executed settlement agreement, but we do not reach the merits of the denial of the motion to intervene because the appellants have no standing to challenge that ruling.

We also address the appellee's motion to dismiss the appeal on the ground that the superior court's judgment was not final and directly appealable since it reserved the issue of attorney fees. Because the only attorney fees at issue were ancillary and post-judgment fees under OCGA § 9-15-14, we deny the motion to dismiss.

When a motion to enforce a settlement agreement is decided without an evidentiary hearing, [as in this case,] the issues raised are procedurally analogous to those in a motion for summary judgment. Accordingly, [the court must] view[] the evidence in the light most favorable to the nonmoving party, [and] the movant must show that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on whether a settlement was reached. On appeal, we apply a de novo standard of review to the trial court's determination to enforce the settlement agreement.[1]

So viewed, the evidence shows that brothers Aaron, Andrew, and Joseph Miller are officers and the only shareholders of American Plumbing Professionals, Inc. After a dispute arose between the brothers, Aaron filed a complaint against Andrew and Joseph, claiming breach of fiduciary duties and seeking dissolution of American Plumbing or appointment of a receiver. On September 18, 2017, the brothers engaged in mediation to resolve the case. At the close of the mediation, the mediator issued a report indicating that the case had settled in part, and the parties initialed a handwritten document listing 15 agreed-to settlement terms. Those terms provided that Aaron's brothers would purchase his interest in the company for $850,000.[2]

---

[1] (Citations and punctuation omitted.) *Francis v. Chavis*, 345 Ga. App. 641 (814 SE2d 778) (2018).

[2] The written settlement terms included additional provisions such as the absence of a non-compete clause for Aaron, a schedule for initial partial payments to Aaron (which were made), the transfer of equipment to the company, payment of

2

As agreed to at the mediation, drafts of a Settlement, Release, and Stock Purchase Agreement ("Purchase Agreement") and certain other ancillary agreements were prepared by September 22, 2017.[3] The parties contemplated that the stock transfer would close on November 3, 2017, but the mediated terms provided that Joseph and Andrew could pay Aaron to obtain a three-month extension period in the event that they were unable to obtain financing by that date. On November 3, pursuant to that provision, Aaron's brothers tendered $100,000 to Aaron's attorney to extend the closing date to February 2, 2018, and allow them to continue pursuing financing.[4]

On December 28, 2017, defendants Andrew and Joseph signed a proposed Purchase Agreement and sent it to Aaron, indicating that they needed him to sign and return it by the following day in order to meet banking deadlines to close the transaction. Aaron did not sign that proposed agreement; instead, working from an

---

attorney and mediation fees, and dismissal of the case upon execution of the Purchase Agreement.

[3] These other agreements included assignment of hardware, software, phone numbers, and Internet services.

[4] The Settlement Agreement provided that this payment would be applied to payment of the purchase price.

earlier draft, Aaron's attorney mistakenly requested removal of a promissory note provision that had already been removed from the current draft. Soon thereafter, Aaron's attorney forwarded the December 28 draft to Aaron, who signed it on January 10, 2018. At this point, all of the parties had signed the Purchase Agreement.

A month later, after his brothers refused to close, Aaron filed the present motion to enforce the Purchase Agreement. American Plumbing moved to intervene, which motion the superior court denied. After holding a non-evidentiary hearing on the motion to enforce the purported settlement agreement, the superior court entered an order granting the motion. Andrew and Joseph appealed from that order, but this court dismissed the appeal since the superior court had not yet entered final judgment on that order.

Upon the return of the case to the superior court, the superior court entered a final judgment on its order enforcing the purported settlement agreement. Three days after that final judgment, the court held a hearing on an emergency motion to withdraw certain funds filed by Aaron. At that hearing, Aaron orally raised the issue of attorney fees he had incurred in seeking to enforce the purported settlement agreement. The superior court judge indicated that she should have left the issue of attorney fees open and that she would amend her final judgment to do so. The next

day, the judge issued an amended final order, entering judgment in favor of Aaron and reserving the issue of attorney fees. Andrew and Joseph filed a notice of appeal from that final judgment, and Aaron subsequently filed a motion for attorney fees pursuant to OCGA § 9-15-14.

1. *Motion to Dismiss.* Appellee Aaron has moved to dismiss the appeal, claiming that the superior court's judgment was not a directly appealable final judgment because it reserved the issue of attorney fees. We deny the motion to dismiss because the only attorney fees at issue are those sought in a post-judgment motion under OCGA § 9-15-14, an award of which would be ancillary to, and not part of, the underlying final judgment enforcing the settlement agreement.

> Two Code sections determine the method for pursuing appeals to this [c]ourt: OCGA § 5-6-34, which describes the trial court's judgments and orders that may be appealed directly, and OCGA § 5-6-35, which lists cases in which an application for appeal is required. Pursuant to OCGA § 5-6-34 (a) (1), direct appeals are generally authorized from lower court orders that are final, meaning that there are no issues remaining to be resolved in the lower court.[5]

---

[5] *Woodruff v. Choate*, 334 Ga. App. 574, 576 (1) (a) (780 SE2d 25) (2015) (citations and punctuation omitted).

In *Sotter v. Stephens*,[6] our Supreme Court considered whether a case remains pending in a trial court which has explicitly reserved the issue of attorney fees under OCGA § 13-6-11 and "concluded that, because the amount of [such] fees was reserved for future determination by the trial court, one cannot claim that the case is no longer pending in the court below as required by OCGA § 5-6-34 (a) (1)."[7] But *Sotter* also stated that unlike an attorney fees award under OCGA § 13-6-11, "an attorney fees award pursuant to OCGA § 9-15-14 may be considered ancillary and post-judgment."[8] As explained in *Sotter*:

> Awards of attorney fees under the aegis of OCGA § 13-6-11 apply to conduct arising from the transaction underlying the cause of action in litigation. Conversely, OCGA § 9-15-14 . . . has been interpreted to govern conduct occurring during the litigation. Thus, while an attorney fees award pursuant to OCGA § 9-15-14 may be considered ancillary and post-judgment, an award of attorney fees under OCGA § 13-6-11, as in the present case, is considered part of the underlying case.[9]

---

[6] 291 Ga. 79, 84 (727 SE2d 484) (2012).

[7] (Citation and punctuation omitted.) *Edokpolor v. Grady Mem. Hosp. Corp.*, 302 Ga. 733, 734 (808 SE2d 653) (2017).

[8] (Citation and punctuation omitted.) *Edokpolor*, 302 Ga. at 735.

[9] (Citations and punctuation omitted.) *Sotter*, 291 Ga. at 83-84.

6

Moreover, "a claim for attorney fees under [OCGA § 9-15-14] may be asserted post-judgment – up to 45 days after the final disposition of the action, OCGA § 9-15-14 (e) – and appeals of awards under OCGA § 9-15-14 are among the exceptions to OCGA § 5-6-34 (a) (1) enumerated in OCGA § 5-6-35 (a), which must be taken by application."[10] Thus, it is error to "conclude[] that the pre-judgment filing of a motion [for attorney fees] under [another statute] is analogous to a post-judgment filing of a motion for attorney fees under OCGA § 9-15-14."[11]

In the instant case, it is undisputed that the only attorney fees in question are those sought by Aaron in a post-judgment motion for attorney fees under OCGA § 9-15-14. The superior court's reservation of the issue of such ancillary and post-judgment attorney fees did not render the court's final judgment non-final. Rather, that judgment enforcing the settlement agreement was final and directly appealable under OCGA § 5-6-34 (a) (1). Accordingly, the motion to dismiss the appeal of that final judgment is hereby denied.

---

[10] *Edokpolor*, 302 Ga. at 735.

[11] Id. at 735-736.

7

2. *Enforcement of settlement agreement.* Appellants Andrew and Joseph contend that the superior court erred by granting the motion to enforce the Purchase Agreement. We disagree.

In the context of determining the enforceability of a settlement agreement, the law is well-settled.

> Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case would have been the [mediation terms signed by the parties as later memorialized by] the attorneys for the parties. As the existence of a binding agreement is disputed, the proponent of the settlement must establish its existence in writing. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.[12]

---

[12] (Punctuation omitted.) *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 882-883 (616 SE2d 108) (2005).

8

Further, we recognize that the standard of review requires this Court to view "the evidence in the light most favorable to the nonmoving party, [and the party seeking to enforce the agreement] must show that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on whether a settlement was reached."[13] But this does not mean that every factual dispute will require us to conclude that a settlement was not reached. Rather, only "genuine issue[s] of *material* fact"[14] require reversal. As explained in more detail below, the factual issues identified by the dissent are not material because they do not change the fact that the parties reached a settlement at mediation, and those terms were memorialized in the Purchase Agreement signed by all the parties.

As recounted above, the record shows that at the conclusion of the September 2017 mediation, the parties initialed a document containing a list of 15 items agreed to by the parties as a result of their mediation. Although that document is handwritten, there is no dispute as to its contents or the parties' unequivocal acceptance of the

---

[13] (Punctuation omitted.) *Francis v. Chavis*, 345 Ga. App. 641, 642 (814 SE2d 778) (2018).

[14] (Emphasis supplied.) Id. at 644.

terms at the time of the mediation. Further, as carefully reproduced in the superior court order, each term of the initialed mediation document is reflected in a corresponding term in the signed Purchase Agreement. Based on this, the mediated terms and subsequent Purchase Agreement represent a binding settlement agreement. "[T]he parties entered into a mutual binding agreement [at the mediation]. Thereafter, the drafting of documents necessary to effectuate the settlement agreement may have been a condition of the performance *but it was not an act necessary to acceptance of the offer to settle*."[15] For example, in a similar case, this Court reversed the denial of a motion to enforce a settlement agreement based on an email memorializing the settlement terms, even though, as the email stated, the "'attorneys are currently drafting the settlement documents.'"[16]

Nevertheless, Andrew and Joseph contend that the record contains two factual disputes that preclude enforcement of the settlement agreement: (a) whether Aaron

---

[15] (Punctuation omitted; emphasis supplied.) *Johnson v. DeKalb County*, 314 Ga. App. 790, 794 (1) (726 SE2d 102) (2012), quoting *Pourreza*, 273 Ga. App. at 883. See also *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998) (reversing trial court order denying a motion to enforce a settlement agreement despite the drafter's "seeming inability to get the draft and the release correct," in light of an earlier agreement as to the terms of settlement).

[16] *Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 327 Ga. App. 121, 128 (3) (755 SE2d 511) (2014).

made a counteroffer to the final Purchase Agreement, and (b) whether Aaron's signature in January 2018 was a timely acceptance. Both of these questions stem from an exchange between attorneys in December 2017, and neither is material to the earlier agreement by all the parties to the mediated terms.

(a) *Existence of a counteroffer*. In December 2017, the attorneys exchanged several rounds of emails regarding the logistics of closing and finalizing the Purchase Agreement for signature. In one exchange, after Andrew and Joseph's counsel sent a draft of the Purchase Agreement to Aaron's counsel, Aaron's counsel requested an edit to remove language regarding a promissory note. Thus, the draft remained unsigned in December 2017, and the dissent characterizes this exchange as creating a factual issue as to whether Aaron ultimately accepted the offered Purchase Agreement or whether he proposed a counteroffer, thereby extinguishing the offered Purchase Agreement tendered by his brothers. But as pointed out by the superior court, it is undisputed that Aaron's counsel was mistakenly working from an earlier version of the Purchase Agreement, and the language at issue had already been removed from the current draft. Therefore, any equivocation on the part of Aaron's counsel in December was not substantive and did not amount to a counteroffer. Further, even if there was a material edit requested, the December emails, at most,

11

merely reflect an exchange of revisions seeking to accurately capture the terms already agreed to at the mediation.[17]

(b) *Timeliness of acceptance*. The dissent also points to evidence that Aaron did not accept the formal settlement agreement within the brief turnaround time specified by his brothers in December 2017 email due to the timing of bank deadlines. But it is undisputed that the mediated terms included the extension provision such that if defendants Andrew and Joseph were unable to obtain financing for the transaction by November 3, 2017, they would pursue other financing and Aaron would accept the $100,000 payment for a three-month closing extension. This payment was made, so the closing deadline was extended to February 2, 2018. Accordingly, when the Purchase Agreement was signed by all of the parties as of January 10, 2018, it was well within the agreed-to time frame for closing, and the exchange in December did not render the mediated agreement unenforceable.

---

[17] See *Pourreza*, 273 Ga. App. at 883. See also *Johnson*, 314 Ga. App. at 794 (1) ("[A] rejected offer does not put an end to negotiation where the party who made the original offer renews it or assents to the modification requested in a counteroffer."); *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994) ("[T]he bare fact that [an] acceptance of [an] offer to settle suggested one form of terminating the controversy over another does not render such acceptance a counteroffer which rejects the plaintiff's offer.") (punctuation omitted).

12

3. *Motion to intervene.* Andrew and Joseph complain that the trial court erred by denying American Plumbing's motion to intervene. But the appellants were not parties to that motion and have no standing to complain of the disposition of a motion filed by a non-party who did not appeal the court's order.[18] Accordingly, that ruling is affirmed.

*Judgment affirmed. Hodges, J., concurs in Divisions 1, 3, and in the judgment. McFadden, C. J., concurs in Divisions 1 and 3 and dissents to Division 2.\**

**\*DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2.**

---

[18] See *In the Interest of J. C. H.*, 224 Ga. App. 708, 710 (2) (482 SE2d 707) (1997) (appellant lacked standing to challenge denial of motion to intervene to which she was not a party).

A20A0377. MILLER et al. v. MILLER.

MᴄFᴀᴅᴅᴇɴ, Chief Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 3 of the majority opinion. But I disagree with the majority's decision in Division 2 to affirm the trial court's grant of the motion to enforce the purported settlement agreement. Because there are genuine issues of material fact, the trial court erred in granting the motion to enforce the settlement agreement. So I dissent as to Division 2.

Aaron Miller contends that the parties reached a settlement agreement at mediation and subsequently agreed to one material change, which was reflected in a

formal settlement agreement: removal of a provision for a promissory note. And indeed, after four months of post-mediation negotiations, his brothers did present to him for his signature a proposed formal settlement agreement to that effect. But, explaining that "the bank needs signed documents today" in order to close the loan which would have supplied to the funds to pay him in cash, they imposed a very short deadline. It expired on December 29, 2017. Apparently Aaron Miller let it expire because he mistakenly believed that the promissory note provision had not been removed. He undertook to accept the offer eleven days later. So a jury would be authorized to find that the acceptance did not mirror the offer and so that no contract formed.

> When a motion to enforce a settlement agreement is decided without an evidentiary hearing, [as in this case,] the issues raised are procedurally analogous to those in a motion for summary judgment. Accordingly, [the court must] view[] the evidence in the light most favorable to the nonmoving party, [and] the movant must show that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on whether a settlement was reached. On appeal, we apply a de novo standard of review to the trial court's determination to enforce the settlement agreement.

*Francis v. Chavis*, 345 Ga. App. 641 (814 SE2d 778) (2018) (citations and punctuation omitted).

As the party moving to enforce a settlement agreement, Aaron Miller was required to show the absence of any genuine issues of material fact, and the trial court was required to view the evidence in the light most favorable to his brothers, Andrew and Joseph Miller, as the parties opposing the motion. See *Francis*, supra; *Brooks v. Ironstone Bank*, 314 Ga. App. 879, 881 (726 SE2d 419) (2012). But Aaron Miller did not meet his burden and the trial court, though it recited the proper standard of review in its order, erred by engaging in fact-finding and construing evidence in favor of the movant.

There are genuine issues of material fact as to whether the offer to settle was timely accepted. See *Stephens v. Castano-Castano*, 346 Ga. App. 284, 287 (1) (a) (814 SE2d 434) (2018) (offer to settle not timely accepted). As noted above, the record contains evidence that Aaron Miller did not sign and return the offered settlement agreement within a time deadline set by his brothers. Instead of finding that such evidence created, the trial court relied on other evidence in the record to find that the deadline was not enforceable.

Perhaps so. But it was error to so find as a matter of law. It is not for the trial court or this court to construe the conflicting evidence to make a finding of fact in favor of the movant. Rather, the trial court should have construed the evidence in the

3

light most favorable to the non-movants and found genuine issues of material fact regarding the timeliness of the purported acceptance of the settlement offer.

Likewise, as also noted above, there was evidence that Aaron Miller did not initially respond to the proposed settlement agreement with an unequivocal acceptance and that he instead suggested changes to that offer. It is well-settled that in order "[t]o constitute a contract, the offer must be accepted unequivocally and without variance of any sort. A purported acceptance of a [party's] settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle[.]" *McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012) (citations and punctuation omitted). Aaron Miller's response on the December 29 deadline raised not only the issue of the promissory note but also issues related to a tax indemnity and a non-compete provision.

But the trial court relied on other evidence to find as a matter of fact that Aaron Miller had not rejected the offer by making a counter-offer. That reliance was misplaced. Any evidence in the record which would support such a finding by the trial court merely creates "genuine issues of material fact with regard to the existence of a settlement between the parties[.]" *City of Albany v. Freeney*, 313 Ga. App. 24, 28 (1) (720 SE2d 349) (2011). See *McKenna v. Capital Resources Partners, IV*, 286

4

Ga. App. 828, 832 (1) (650 SE2d 580) (2007) ("[I]n cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.") (citation omitted). Because there are genuine issue of material fact, the trial court erred in granting the motion to enforce the purported settlement agreement. *Francis*, supra at 644; *Brooks*, supra at 882-883.

In finding that these factual disputes do not preclude enforcement of the purported settlement agreement, the majority has engaged in the same fact-finding as the trial court and has failed to view the evidence in the light most favorable to the non-movants. In concluding that Aaron Miller did not make a counter-offer to his brothers' proposed settlement agreement, the majority has adopted, as the trial court did, an argument put forth by Aaron Miller's attorney that the counter-offer should not really be considered a counter-offer because he was mistakenly working from an earlier version of another proposed settlement agreement (which Aaron had not accepted) when he made the counter-offer. While this self-serving argument might create genuine issues of material fact regarding the counter-offer, it does not

5

authorize us to engage in fact-finding and resolve that question of fact in favor of the party moving to enforce the settlement agreement.

Moreover, the fundamental premise of the majority and the trial court's decision – that the handwritten document initialed by the parties after mediation constituted a full settlement agreement that was merely memorialized in the purported settlement agreement – is unsound. As an initial matter, the mediator's final report stated only that the parties had settled in part, which is evidence that there was not a full and final settlement agreement reached at mediation. Also, Aaron Miller did not move to enforce the handwritten document; rather, he moved to enforce the purported full and final settlement agreement that he signed four months after mediation. And to find that the handwritten document amounted to a full settlement ignores the ensuing four months of back-and-forth settlement negotiations by the parties and the fact that at least one essential term listed in the handwritten document, the promissory note provision, was not included in the purported formal settlement agreement sought to be enforced. Viewing the record in favor of the non-moving parties, there exist genuine issues of material fact that preclude enforcement of the purported settlement agreement. Accordingly, the trial court's order enforcing the settlement agreement should be reversed.