**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 11, 2018**

# In the Court of Appeals of Georgia

A16A0655. MCCONNELL et al. v. GEORGIA DEPARTMENT OF LABOR.

ELLINGTON, Presiding Judge.

Thomas McConnell filed this class action against the Georgia Department of Labor, alleging several tort claims in connection with the Department's disclosure of personal information of McConnell and the proposed class members. After a hearing, the Superior Court of Cobb County granted the Department's motion to dismiss McConnell's complaint for failure to state a claim upon which relief can be granted. McConnell appealed, and, in *McConnell v. Ga. Dept. of Labor*, 337 Ga. App. 457 (787 SE2d 794) (2016), we affirmed. The Supreme Court of Georgia granted a writ of certiorari to consider, inter alia, whether this Court erred "in not addressing the trial court's holding that McConnell's tort claims were barred by sovereign immunity,

which is a jurisdictional issue, before addressing the merits of those claims."[1] The Supreme Court held that we did err in this manner, vacated our decision, and remanded with direction that we "make the threshold determination of whether the trial court erred in its holding that McConnell's claims are barred by sovereign immunity." *McConnell v. Ga. Dept. of Labor*, _ Ga. _ (805 SE2d 79) (2017). For the reasons explained below in Division 1, we conclude that the trial court did err in so holding and reverse the judgment in relevant part. Because the trial court did not err in dismissing McConnell's complaint on the basis that it fails to state a claim upon which relief can be granted, as explained below in Divisions 2 through 4, we affirm the judgment in part in this regard.

In his complaint, McConnell alleges that a Department employee, while acting within the scope of his official duties or employment, sent an email to approximately 1,000 Georgians who had applied for unemployment benefits or other services administered by the Department. The email included a spreadsheet that listed the

---

[1] See *Lathrop v. Deal*, 301 Ga. 408, 408, 432 (III) (B) (801 SE2d 867) (2017) ("Simply put, the constitutional doctrine of sovereign immunity forbids our courts to entertain a lawsuit against the State without its consent. . . . Sovereign immunity . . . – like various other rules of jurisdiction and justiciability – is concerned with the extent to which a case properly may come before a court at all.") (punctuation omitted).

name, social security number, home phone number, email address, and age of over 4,000 Georgians who had registered for Department services, including McConnell.[2] McConnell alleges that the employee's conduct constituted the torts of negligently disclosing "personal information" as defined under Georgia law, breach of fiduciary duty, and invasion of privacy (public disclosure of private facts). McConnell seeks economic damages, specifically, out-of-pocket costs related to credit monitoring and identity protection services and damages resulting from the adverse impact to his credit score from the closing of accounts. In addition, he seeks damages for the "fear, upset, anxiety and injury to peace and happiness related to the disclosure of [his] personal identifying information, as the disclosure of personal identifying information had provided all the raw material necessary to facilitate the theft of [his identity] and unauthorized charges upon [his] credit or bank accounts." He does not allege that an act of identity theft has yet occurred.

---

[2] We note that these factual allegations are not disputed. The Department admitted creating the spreadsheet and admitted that the spreadsheet included McConnell's name, social security number, home phone number, age, and email address. It admitted that its employee, in attempting to send the spreadsheet to another Department employee, inadvertently sent the spreadsheet via email to approximately 1000 recipients. In addition, the Department admitted that the information was "personal information" under Georgia law. See Division 2, infra.

3

1. McConnell contends that the trial court erred in holding that the state has not waived its sovereign immunity pursuant to the Georgia Tort Claims Act, OCGA §§ 50-21-20 through 50-21-37, for the type of losses that he alleges in his claims.[3]

With regard to tort claims against the state, the General Assembly adopted the Act for the express purpose of "balanc[ing] strict application of the doctrine of sovereign immunity," which, in its breadth,[4] "may produce inherently unfair and

[3] We note that the trial court placed its determination the state has not waived sovereign immunity for the types of "loss" McConnell claims in the section of its dismissal order that concerns McConnell's claim for negligent disclosure of personal information. Although the trial court did not incorporate its sovereign immunity ruling into the sections of its order that concern McConnell's claims for breach of fiduciary duty and invasion of privacy, one can infer, as the Supreme Court did, that the trial court also determined that sovereign immunity is not waived as to those claims as well. See *McConnell v. Ga. Dept. of Labor*, _ Ga. _ (805 SE2d 79) (2017) ("The Department filed a motion to dismiss McConnell's claims, which the trial court granted on two bases: (1) McConnell's claims were barred by sovereign immunity and (2) on the merits, each of McConnell's contentions failed to state a claim upon which relief could be granted."). Accordingly, our consideration of sovereign immunity is not limited to McConnell's claim for negligent disclosure of personal information.

[4] The Georgia Constitution provides:

Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

4

inequitable results, against the need for limited exposure of the state treasury to tort liability." (Citation and punctuation omitted.) *Bd. of Regents of Univ. Sys. of Ga. v. Myers*, 295 Ga. 843, 845 (764 SE2d 543) (2014).[5] Under the Act, the state waives its sovereign immunity with respect to actions brought in Georgia courts "for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances[,]" subject to exceptions

---

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

[5] OCGA § 50-21-21 (a) provides:

The General Assembly recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the General Assembly recognizes that, while private entrepreneurs voluntarily choose the ambit of their activity and can thereby exert some control over their exposure to liability, state government does not have the same flexibility. In acting for the public good and in responding to public need, state government must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be involved. The exposure of the state treasury to tort liability must therefore be limited. State government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of this state that the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article.

and limitations set forth in the Act. OCGA § 50-21-23 (a). A "claim" under the Act is defined as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties or employment." OCGA § 50-21-22 (1). OCGA § 50-21-22 (3) provides: "'Loss' means personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence."

"Because sovereign immunity is not an affirmative defense, but rather a privilege that is subject to waiver by the State, the party seeking to benefit from that waiver has the burden of establishing the waiver of sovereign immunity." (Citations and footnote omitted.) *Williams v. Ga. Dept. of Corrections*, 338 Ga. App. 719, 720 (1) (791 SE2d 606) (2016). "We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law." (Citation and punctuation omitted.) *Ga. Dept. of Transp. v. King*, 341 Ga. App. 102, 103 (798 SE2d 492) (2017).

(a) *Economic damages/financial harm*. With regard to McConnell's alleged economic damages, the Department argues that sovereign immunity is waived under

6

the Act only for a "loss" as that term is defined in the Act and that McConnell has not suffered such a loss. Specifically, the Department argues, based on the definition of "loss" in OCGA § 50-21-22 (3), that the Act "expressly limits the recovery of economic damages to a plaintiff who has also suffered a personal injury, disease, death." Because McConnell alleges that he suffered economic damages as a result of the Department's email disclosure, but does not allege that the email disclosure "caused him to suffer a disease, death, or injury to his person[,]" the Department contends, McConnell cannot recover economic losses under the Act.

The Department's strained reading of OCGA § 50-21-22 (3) cannot be supported because the subsection, after giving specific examples of injuries that are actionable, expansively adds "any other element of actual damages recoverable in actions for negligence." In *Dept. of Transp. v. Montgomery Tank Lines, Inc.*, 276 Ga. 105 (575 SE2d 487) (2003), the Supreme Court of Georgia considered the effect of that "broad last clause in § 50-21-22 (3)" and rejected the agency's proposed narrow reading. Id. at 107-108 (1). The Supreme Court found that, notwithstanding that the losses specifically listed (personal injury; disease; death; damage to tangible property; pain and suffering; and mental anguish) are all so-called "first-party losses," the "term of enlargement" (that is, the phrase "any other element of actual damages recoverable

7

in actions for negligence") is "specific and unambiguous and requires a broader meaning than that attributed to it" by the agency. Id. at 107 (1). The Supreme Court explained: "[c]learly, an action for contribution and indemnification is an action for negligence, and the damages that the contribution plaintiffs seek to recover are unquestionably an element of actual damages[.]" Id. at 107 (1). The Supreme Court found that the concluding phrase of the "loss" definition means that sovereign immunity is not waived only for a person who directly suffers the personal injury, disease, death, or other loss but is broad enough to include claims for contribution and indemnification. Id. at 108 (1). Furthermore, the Supreme Court concluded, the fact that the waiver of sovereign immunity is subject to specific "exceptions" set forth in OCGA § 50-21-24, and that contribution and indemnity actions are not listed as exceptions, "further buttresses the conclusion that such actions against the State are not categorically precluded by the [Act]." Id.

Similarly, we conclude in this case that the catch-all phrase, "any other element of actual damages recoverable in actions for negligence," requires a broader meaning than that attributed to it by the Department. See *Dept. of Transp. v. Montgomery Tank Lines, Inc.*, 276 Ga. at 107-108 (1). The General Assembly certainly could have modified "any other element of actual damages recoverable in actions for negligence"

8

with "sustained by a person who suffered injury, disease, or death" if it had intended to limit the final phrase in this way.[6] Based on the express terms of OCGA § 50-21-22 (3) and the cases cited herein, we conclude that losses under the Act may include economic losses suffered by a plaintiff who has not also suffered a personal injury, disease, or death.

In a related vein, the Department contends that any time, effort, and money that McConnell allegedly spent monitoring his credit is not an actual injury that is recoverable in negligence cases. Acknowledging that Georgia courts have not addressed whether obtaining credit monitoring services after the disclosure of confidential information constitutes a cognizable injury, the Department contends that courts in other jurisdictions have rejected such claims. In addition, the Department contends that McConnell cannot recover for an increased risk of future identity theft because such risk does not constitute an element of actual damages that is recoverable under Georgia law.[7] Because McConnell alleged damages resulting in part from the

[6] Notably, in *Dept. of Transp. v. Montgomery Tank Lines, Inc.*, the contribution plaintiffs suffered only economic losses and, being corporate entities, could not have suffered disease, death, or injury to their persons.

[7] See *Finnerty v. State Bank & Trust Co.*, 301 Ga. App. 569, 572 (4) (687 SE2d 842) (2009) (Where the plaintiff failed to demonstrate that a bank's disclosure of his social security number made it probable, as opposed to merely possible, that he would

9

adverse impact to his credit score from the closing of accounts, we cannot say that he seeks compensation only for credit-monitoring expenses or the risk of *future* economic damages from identity theft. Whether McConnell can prove that he has suffered financial harm as a result of the adverse impact to his credit score from the closing of accounts is not a question to be resolved at this threshold. See *Upper Oconee Basin Water Auth. v. Jackson County*, 305 Ga. App. 409, 412 (1) (699 SE2d 605) (2010) ("A motion to dismiss asserting sovereign immunity is based upon the trial court's lack of subject matter jurisdiction, rather than the merits of the plaintiff's claim.") (citation and punctuation omitted); *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002) (accord).[8]

---

suffer any identity theft and failed to demonstrate that any specific persons actually had accessed his confidential personal information, the bank was entitled to summary judgment because a fear of future damages from identity theft is too speculative to form the basis for recovery.), disapproved of on other grounds in *Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 327 Ga. App. 121, n. 4 (2) (755 SE2d 511) (2014).

[8] See also *Ga. Dept. of Public Safety v. Johnson*, 343 Ga. App. 22, 23-24 (806 SE2d 195) (2017) (Where subject matter jurisdiction is challenged on the basis of sovereign immunity, the trial court considers evidence only to the extent factual findings are necessary to decide the threshold issue of whether the defendant's entitlement to sovereign immunity deprives the court of subject matter jurisdiction.).

(b) *Mental anguish*. With regard to McConnell's claims for damages for his continuing fear and anxiety of potential identity theft in the future, the Department invokes Georgia's so-called "impact rule," arguing that "[t]he 'impact rule' states that '[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury[,]'" quoting *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826 (1992). To the extent the Department suggests that the impact rule applies to *any* claim concerning negligent conduct, this is incorrect. To the contrary, the impact rule applies specifically to claims for negligent infliction of emotional distress. See *Coon v. Medical Center, Inc.*, 300 Ga. 722, 734 (4) (797 SE2d 828) (2017); *Bruscato v. O'Brien*, 307 Ga. App. 452, 457 (1) (705 SE2d 275) (2010), aff'd, 289 Ga. 739, 715 SE2d 120 (2011); *Clarke v. Freeman*, 302 Ga. App. 831, 836 (1) (692 SE2d 80) (2010); Charles R. Adams, Ga. Law of Torts § 29:2 (b) (updated December 2017). The Department has not shown that Georgia law requires proof that a plaintiff suffered a physical impact and a physical injury in order to recover for the *claims* McConnell alleges – negligent disclosure of personal information, invasion of privacy, and breach of fiduciary duty – even where the alleged *damages* include emotional harm.

11

Having found no merit in any of the Department's arguments, as explained above, we conclude that McConnell carried his burden of showing that the trial court had subject matter jurisdiction over his claims for negligently disclosing personal information, breach of fiduciary duty, and invasion of privacy, which are tort claims that are not excepted from the waiver of sovereign immunity for tort claims pursuant to the Act,[9] and which are based on the conduct of state officers and employees while acting within the scope of their official duties or employment. Accordingly, the trial court erred in granting the Department's motion to dismiss McConnell's claims on the basis of the bar of sovereign immunity. The judgment is therefore reversed in relevant part. *McCoy v. Ga. Dept. of Admin. Svcs.*, 326 Ga. App. 853, 858 (755 SE2d 362) (2014); *Williamson v. Dept. of Human Resources*, 258 Ga. App. 113, 116 (1) (572 SE2d 678) (2002); *McCrary Engineering Corp. v. City of Bowdon*, 170 Ga. App. 462, 466 (1) (317 SE2d 308) (1984).

---

[9] OCGA § 50-21-24 sets out a list of claims specifically excluded from the general waiver of sovereign immunity for tort claims against the state, such as claims for malicious prosecution, negligent highway design, and failure to provide fire protection. The Department does not contend that McConnell's claims fall within one of the enumerated exceptions.

12

Because the threshold issue of sovereign immunity is decided in favor of the trial court having had subject matter jurisdiction, we must again consider the merits of McConnell's claims.

2. McConnell contends that the trial court erred in ruling that he failed to state a claim for negligent disclosure of personal information, based, inter alia, on its determination that as a matter of law "there is no legal duty [under Georgia law] to safeguard personal information."

> [A] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo.

(Citation and punctuation omitted.) *RES-GA McDonough, LLC v. Taylor English Duma LLP*, _ Ga. _ (Case No. S17A1125, decided October 30, 2017).

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. The legal duty is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm. This legal obligation to the complaining party must be found, the observance of which would have averted or avoided the injury or damage; the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law. The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw. The existence of a legal duty is a question of law for the court.

(Citations and punctuation omitted.) *Rasnick v. Krishna Hospital, Inc.*, 289 Ga. 565, 566-567 (713 SE2d 835) (2011).[10]

---

[10] See OCGA § 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."); OCGA § 51-1-8

14

McConnell contends that a common law duty exists to safeguard and protect the personal information of another and argues that OCGA §§ 10-1-393.8 and 10-1-910 help establish the duty of care to be exercised by those who collect or hold

("Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."); see also *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162, 164 (744 SE2d 686) (2013) (A legal duty that will support an actionable claim of negligence "cannot rest solely upon OCGA § 51-1-6 because this statute sets forth merely general principles of tort law. By its express terms, tort liability under OCGA § 51-1-6 mandates that the alleged tortfeasor[ ] ha[s] breached a legal duty to perform a beneficial act or to refrain from doing an injurious act. So, the legal duty to support [a plaintiff's] negligence claim must be found in another legislative enactment" beside OCGA § 51-1-6.) (citation omitted); *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1) (514 SE2d 195) (1999) (The first element of a cause of action for negligence is "[a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm[.]") (citation and punctuation omitted); *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 195 (2) (756 SE2d 277) (2014) ("[D]uty arises either from statute or from a common law principle recognized in the case law.") (citation omitted); *Pulte Home v. Simerly*, 322 Ga. App. 699, 705-706 (3) (746 SE2d 173) (2013) ("It is well-settled that Georgia law allows the adoption of a statute or regulation as a standard of conduct so that its violation becomes negligence per se. OCGA § 51-1-6 authorizes a plaintiff to recover damages for the breach of a legal duty even when that duty arises from a statute that does not provide a private cause of action. OCGA § 51-1-6 does not create a legal duty but defines a tort and authorizes damages when a legal duty is breached.") (citation and punctuation omitted); *Rockefeller v. Kaiser Foundation Health Plan of Georgia*, 251 Ga. App. 699, 702-703 (554 SE2d 623) (2001) (To determine whether the violation of a statute is negligence per se "it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.") (citations, punctuation, and footnote omitted).

15

personal information. In OCGA §§ 10-1-910, the General Assembly set out legislative findings underlying the Georgia Personal Identity Protection Act, OCGA §§ 10-1-910 through 10-1-915 (the "GPIPA"), enacted in 2005.[11] In the GPIPA, the General Assembly found, inter alia, that "[t]he privacy and financial security of individuals is increasingly at risk, due to the ever more widespread collection of personal information by both the private and public sectors[,]" that '[i]dentity theft is one of the fastest growing crimes committed in this state[,]" and that "[i]dentity theft is costly to the marketplace and to consumers[.]" OCGA § 10-1-910 (1), (6). Because "[v]ictims of identity theft must act quickly to minimize the damage[,] . . . expeditious notification of unauthorized acquisition and possible misuse of a person's personal information is imperative." OCGA § 10-1-910 (7). In line with these findings, the GPIPA requires that affected persons be given certain notice of a data breach and the right and ability to place a security freeze on their credit report.[12]

---

[11] See Ga. Laws 2007, p. 450 (Act 241), § 1 (for name designation).

[12] The GPIPA requires a government entity (as a "data collector") "that maintains computerized data that includes personal information of individuals" to give prompt notice to affected Georgia residents of any security breach, that is, acquisition of unencrypted personal information by any unauthorized person and, under specified circumstances, to notify, without unreasonable delay, all consumer reporting agencies that compile and maintain files on consumers on a nation-wide basis of the timing, distribution, and content of the notices. OCGA §10-1-912 (a), (d).

16

McConnell contends that in codifying these findings the General Assembly demonstrated its intent to protect citizens from the adverse effects of disclosure of personal information and created a general duty to preserve and protect personal information. Notably, however, despite the General Assembly's aspirational recognition of the harm caused by identity theft, the GPIPA does not proscribe any conduct in storing data or protecting data security. Rather the GPIPA proscribes particular conduct, that is, notification and the placement of a security freeze, only *after* a (known or suspected) data security breach has occurred. Because the GPIPA does not impose any standard of conduct in implementing and maintaining data security practices, we conclude that it can not serve as the source of a general duty

---

See OCGA § 10-1-911 (1) (definition of a "breach of the security of the system"), (2) (definition of a "data collector"), (3) (definition of "notice"); 10-1-914 (security freezes on consumer credit reports); 10-1-914.1 (security freezes on consumer credit reports for minors and wards); 10-1-915 (required notice of right to obtain a security freeze on consumer credit report). The GPIPA's definition of "personal information" includes an individual's first and last name in combination with the person's social security number. OCGA § 10-1-911 (6). Another example is a person's name in combination with a credit or debit card number, if under the circumstances the number could be used without a password or other information. Id.

17

to safeguard personal information. *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162, 165 (744 SE2d 686) (2013).[13]

Similarly, we conclude that OCGA § 10-1-393.8, which is part of the Fair Business Practices Act of 1975 (the "FBPA") as amended,[14] can not serve as the source of such a general duty to safeguard and protect the personal information of another. That Code section provides that, except as otherwise provided, "a person, firm, or corporation shall not: . . . [p]ublicly post or publicly display in any manner an individual's social security number. . . . '[P]ublicly post' or 'publicly display' means to intentionally communicate or otherwise make available to the general

---

[13] In *Wells Fargo Bank, N.A. v. Jenkins*, a bank customer based a claim of negligence on the bank's failure to protect his personal information and asserted that the legal duty to support his negligence claim was found in the federal Gramm-Leach-Bliley Act, the "GLBA," 15 U. S. C. § 6801 et seq. The Supreme Court of Georgia explained that, although the GLBA "expressly authorizes federal agencies . . . to establish appropriate standards" for financial institutions "relating to administrative, technical, and physical safeguards," including safeguards "to protect against unauthorized access to or use of [customers'] records or information which could result in substantial harm or inconvenience to any customer," see 15 U.S.C. § 6801 (a), such "an aspirational statement of Congressional policy" should not be "misread . . . as establishing a legal duty, the alleged breach of which would give rise under the law of this State to a cause of action for negligence against financial institutions[,]" as that would improperly usurp legislative authority. 293 Ga. at 164-165.

[14] OCGA § 10-1-390 (OCGA § 10-1-390 through 10-1-408 shall be known as the "Fair Business Practices Act of 1975.").

public[.]" OCGA § 10-1-393.8. As the trial court noted in the appealed order, the FBPA expressly prohibits *intentionally* communicating a person's social security number, while McConnell alleges that the Department *negligently* disseminated his SSN by failing "to take the necessary precautions required to safeguard and protect the personal information from unauthorized disclosure." Although the FBPA imposes a standard of conduct to refrain from intentionally and publicly posting or displaying SSNs,[15] a legal duty to refrain from doing something intentionally is not equivalent to a duty to exercise a degree of care to avoid doing something unintentionally, which falls within the ambit of negligence. The trial court correctly concluded that McConnell's complaint is premised on a duty of care to safeguard personal

[15] The trial court questioned whether the Department is "a person, firm, or corporation" subject to OCGA § 10-1-393.8. But the Department does not contend that it is not subject to the statute. See OCGA §§ 10-1-392 (24) (For purposes of the FBPA, including OCGA § 10-1-393.8, "'[p]erson' means a natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity."); 34-2-1 ("There is created and established a separate and independent administrative agency to be known as the Department of Labor."); *Foskey v. Vidalia City School*, 258 Ga. App. 298, 301 (b) (574 SE2d 367) (2002) ("When a governmental entity or quasi-public entity has independent legal status as a public corporation, agency, or authority, the legislative act creating such governmental entity generally confers one or more of the power and authority to contract, hold property, eminent domain, or sue and be sued. The fact that a governmental entity may have sovereign immunity from a tort action does not prevent such entity from being a separate legal entity or an entity that may sue and be sued.") (citations omitted).

information that has no source in Georgia statutory law or caselaw and that his complaint therefore failed to state a claim of negligence. *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 195-196 (2) (756 SE2d 277) (2014).

Given the General Assembly's stated concern about the cost of identity theft to the marketplace and to consumers, as well as the fact that it created certain limited duties with regard to personal information (e. g., the duty to notify affected persons of data breaches and the duty not to intentionally communicate information such as SSNs to the general public), it may seem surprising that our legislature has so far not acted to establish a standard of conduct intended to protect the security of personal information, as some other jurisdictions have done in connection with data protection and data breach notification laws.[16] It is beyond the scope of judicial authority,

[16] See e.g. Ark. Code Ann. 4-110-104 (b) (In the Arkansas Personal Information Protection Act: "A person or business that acquires, owns, or licenses personal information about an Arkansas resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."); Cal. Civ. Code § 1798.81.5 (In the California Database Breach Act: "It is the intent of the Legislature to ensure that personal information about California residents is protected. . . . A business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."); Fla. Stat. Ann. § 501.171 (2) ("Each covered entity, governmental entity, or third-party agent shall take reasonable

however, to move from aspirational statements of legislative policy to an affirmative

legislative enactment sufficient to create a legal duty.[17]

---

measures to protect and secure data in electronic form containing personal information."); Md. Code Ann., Commercial Law § 14-3503 (In the Maryland Personal Information Protection Act: "To protect personal information from unauthorized access, use, modification, or disclosure, a business that owns or licenses personal information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned or licensed and the nature and size of the business and its operations."); Md. Code Ann., State Government § 10-1304 ("To protect personal information from unauthorized access, use, modification, or disclosure, a [state government] unit that collects personal information of an individual shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information collected and the nature of the unit and its operations."); Nev. Rev. Stat. Ann. § 603A.210 (1) ("A data collector that maintains records which contain personal information of a resident of this State shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure."); Rhode Island Gen. Laws Ann. § 11-49.3-2 (a) (In the Rhode Island Identity Theft Protection Act of 2015: "A municipal agency, state agency or person that stores, collects, processes, maintains, acquires, uses, owns or licenses personal information about a Rhode Island resident shall implement and maintain a risk-based information security program that contains reasonable security procedures and practices appropriate to the size and scope of the organization; the nature of the information; and the purpose for which the information was collected in order to protect the personal information from unauthorized access, use, modification, destruction, or disclosure and to preserve the confidentiality, integrity, and availability of such information.").

[17] See *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. at 165; *Blotner v. Doreika*, 285 Ga. 481, 481-482 (1) (678 SE2d 80) (2009) (Where a particular common law duty was not recognized in Georgia, the common law rule could be changed only by legislative act.); *Perdue v. Baker*, 277 Ga. 1, 14 (586 SE2d 606) (2003) ("The core

3. McConnell contends that the trial court erred in dismissing his breach of fiduciary duty claim for failure to state a claim upon which relief can be granted based on its determination that he had not shown that he had a particular relationship of trust or mutual confidence with the Department. "Establishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Citation and punctuation omitted.) *Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 842 (1) (775 SE2d 199) (2015). "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58.

---

legislative function is the establishment of public policy through the enactment of laws.") (footnote omitted); *Commonwealth Inv. Co. v. Frye*, 219 Ga. 498, 499 (2) (134 SE2d 39) (1963) (Our appellate courts' "authority extends only to the correction of errors of law, and we have no legislative powers or functions. [T]he legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional.") (citations and punctuation omitted).

McConnell argues that, because a fiduciary relationship, in addition to being created by statute or contract, may also be created by the facts of a particular case, a claim for breach of fiduciary duty is uniquely unsuitable for disposition via a motion to dismiss, when the plaintiff has not been able to conduct discovery.[18] In his complaint, McConnell alleged that a fiduciary duty arose when the Department required him to disclose confidential personal identification information in order to obtain services or benefits from the Department and that he reasonably placed his trust and confidence in the Department to safeguard and protect his information from public disclosure. He contends that the Department was "so situated as to exercise a controlling influence over . . . [his] interest" because, unless he provided his personal information to the Department, he would not receive unemployment benefits, resulting in a fiduciary relationship.

In a recent case, a bank employee gave a customer's information to the employee's husband, which allowed her husband to steal the customer's identity. *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257 (724 SE2d 1) (2012), reversed in

---

[18] See *Wright v. Apartment Investment & Mgmt. Co.*, 315 Ga. App. 587, 592 (2) (726 SE2d 779) (2012) ("[S]ince a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve.").

part on other grounds sub nom. *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (744 SE2d 686) (2013), and opinion vacated in part, 325 Ga. App. 376 (752 SE2d 633) (2013). The customer sued the bank, asserting claims that the bank negligently failed to protect his personal information, breached a duty of confidentiality, and invaded his privacy. 314 Ga. App. at 257. The customer alleged that the bank "falsely represented to its customers and members of the general public that it created and implemented a system to adequately protect the private and personal identifying information entrusted to it by its customers[.]" Id. Noting that the bank-customer relationship generally is not a confidential relationship under Georgia law, this Court held that the plaintiff had not pled "any special circumstances showing that he had a particular relationship of trust or mutual confidence with [the bank]." Id. at 262 (2).[19] In other words, the fact that the plaintiff gave the bank his personal information to receive services, and the bank promised to protect this information, did not create a confidential relationship under Georgia law.

_____

[19] See *Jenkins v. Wachovia Bank, N.A.*, 325 Ga. App. 376, 377 (752 SE2d 633) (2013) (Because the Supreme Court in *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (744 SE2d 686) (2013), did not address or consider Division 2 of our earlier opinion in *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257 (724 SE2d 1) (2012), and because that portion of our earlier opinion was consistent with the Supreme Court's opinion, that division remains binding.).

McConnell contends that commercial relationships like the bank-customer relationship at issue in *Jenkins v. Wachovia Bank, N.A.* are fundamentally different from the relationship between him and the Department, given that a customer can choose another bank while a citizen like him, in order to obtain unemployment benefits, has no choice but to comply with the Department's demand to provide personal information. McConnell failed to identify *any* context, however, in which a fiduciary relationship has been deemed to arise between a citizen and an agency, based on a theory that the agency's status as a gatekeeper for government benefits places the agency in a position so as to exercise a controlling influence over the citizen's interest. This argument fails.

4. McConnell contends that the trial court erred in ruling that he failed to state a claim upon which relief can be granted for invasion of privacy, public disclosure of private facts, based, inter alia, on its determination that the elements of that tort cannot be satisfied unless the facts at issue are embarrassing private facts. McConnell argues that

> Georgia law recognizes a variety of information as private and not subject to public disclosure, including certain financial and banking records, medical records, certain police records (particularly records of juvenile crime) and records related to status as a victim of a crime

25

(particularly sexual assault). The law recognizes a claim for unauthorized disclosure of private information in these circumstances.

Under Georgia law,

there are four disparate torts under the common name of invasion of privacy. These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

(Citation and punctuation omitted.) *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 751-752 (2) (740 SE2d 622) (2013). There are at least three necessary elements for recovery for

[p]ublic disclosure of embarrassing private facts about the plaintiff[,] . . . : (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.

*Cabaniss v. Hipsley*, 114 Ga. App. 367, 372 (2) (151 SE2d 496) (1966). See also

*Thomason v. Times-Journal*, 190 Ga. App. 601, 604 (4) (379 SE2d 551) (1989)

(accord).

In *Cumberland Contractors, Inc. v. State Bank & Trust Co.*, the plaintiffs

claimed that the defendant bank's publication of their social security numbers could

result in identify theft, credit card fraud, and other offenses that might damage them

personally and financially. We held that such allegations

> do not fall within the causes of action for invasion of privacy because
> there is no allegation that [the defendant] (1) intruded into the
> [plaintiffs'] seclusion, (2) disclosed embarrassing private facts, (3)
> depicted the [plaintiffs] in a false light, or (4) appropriated the
> [plaintiffs'] name or likeness for [the defendant's] own advantage.

*Cumberland Contractors, Inc. v. State Bank & Trust Co.*, 327 Ga. App. 121, 126 (2)

(a) (755 SE2d 511) (2014). As a result, we held, the trial court properly dismissed the

plaintiffs' claim for invasion of privacy for failure to state a claim for relief under

Georgia law. Id. The trial court in this case properly dismissed McConnell's invasion

27

of privacy claim for the same reason. Id.; *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. at 262-263 (3)[20]; *Cabaniss v. Hipsley*, 114 Ga. App. at 372 (2).

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Herbert E. Phipps, concurs and Mercier, J., concurs specially in Division 1 and concurs fully in Divisions 2,3 and 4.\**

**\*DIVISION 1 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2 (a)".**

---

[20] See *Jenkins v. Wachovia Bank, N.A.*, 325 Ga. App. 376, 377 (752 SE2d 633) (2013) (Because the Supreme Court in *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (744 SE2d 686) (2013), did not address or consider Division 3 of our earlier opinion in *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257 (724 SE2d 1) (2012), and because that portion of our earlier opinion was consistent with the Supreme Court's opinion, that division remains binding.).

A16A0655. McCONNELL et al. v. GEORGIA DEPARTMENT OF

LABOR.

MERCIER, Judge, concurring specially.

I concur specially with the majority's holding in Division 1. While I believe that the majority's adherence to and analysis of *Department of Transp. v. Montgomery Tank Lines, Inc.*, 276 Ga. 105 (575 SE2d 487) (2003) is correct, I am concerned about the continued viability of *Montgomery Tank Lines* in light of the Supreme Court's recent decisions in *Lathrop v. Deal*, 301 Ga. 408 (801 SE2d 867) (2017) and *Georgia Department of Nat. Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593 (755 SE2d 184) (2014). However, any tension that may exist among these cases is not for this Court to resolve. I am constrained to agree with the majority's holding in Division 1. Therefore, I concur specially in Division 1. I concur fully in Divisions 2, 3 and 4.